[No. 936.    April 25, 1902.]

## UNITED STATES OF AMERICA, Appellee, v. BENITO GRIEGO, Appellant.

### SYLLABUS.

1. Where in an indictment for adultery, under the laws of the United States, the indictment charges that the defendant, "did unlawfully commit the crime of adultery by then and there having unlawful intercourse" and further charges that the defendant was a married man, the indictment is sufficient, notwithstanding the omission of the words sexual or carnal.

2. It was not error for the court to admit the testimony of Cruz Martinez, as the same was competent and material, within the issues.

3. There being a substantial conflict in the evidence, it was not error for the court to refuse to instruct the jury to find for the defendant, as requested by defendant's counsel at the close of the testimony, nor to refuse such instruction at close of testimony for the prosecution, such testimony being competent and tending to sustain the charge.

4. Where, in such case, the court charged the jury upon the evidence both from the standpoint of the prosecution and the defendant, as follows: "There is, however, no presumption of guilt unless such circumstances are shown by the government as would justify a reasonable person to be satisfied beyond a reasonable doubt that the defendants had sexual intercourse with each other within three years previous to March 1, 1901. If you believe from the evidence before you, that the whole family, or some portion thereof, regularly and at all times occupied the family sleeping room in common with the defendants for three years prior to March 1, 1901, then there is no presumption of guilt. If on the other hand, you find from the evidence beyond a reasonable doubt that the defendants within three years previous to March 1, 1901, occupied the sleeping apartment alone, as a sleeping room, that circumstance alone raises a presumption of guilt;" while it would be error in a criminal prosecution, where the jury cannot under any circumstances infer guilt, in a prosecution for adultery, where direct proof is rarely, if ever obtainable, and for this reason, the law authorizes a jury to infer guilt where the circumstances proven are such as to warrant such inference, the use of the word presumption was equivalent to the use of the word infer, and the jury being left free to determine the value and weight of the evi-

United States v. Griego.

dence upon which to base such presumption of fact or inference, the jury could not be misled by such instruction and the giving of it was not reversible error in this case.

Appeal from the district court of the First judicial district before DANIEL H. MCMILLAN, Associate Justice. Affirmed.

A. B. RENEHAN for appellant.

"The Supreme Court in appeals or writs of error shall examine the record, and on the facts therein contained alone shall award a new trial, reverse or affirm the judgment of the district court, or give such other judgment as to them shall seem agreeable to law."

Compiled Laws, 1897, sec. 3141; Territory v. Herrera, 66 Pac. 523; Territory v. McFarland, 7 N. M. 421; Territory v. Davis, 6 N. M. 452; Territory v. Barret, 8 N. M. 70.

In a criminal case where there are formal assignments of error, general exceptions will be considered by the Supreme Court.

Territory v. Guillen, 66 Pac. 527.

Acts innocent in themselves must be connected with acts tending to show criminal intimacy. This requirement has not been met in this case.

State v. Clawson, 30 Mo. App. 139.

But such acts must be connected with the offense charged, yet not too remotely.

1 Am. and Eng. Ency. Law (2 Ed.), p. 754, notes 7 and 1; Hughes Criminal Law and Proc., sec. 1976; 2 Greenleaf Ev., sec. 47; State v. Kemp, 87 N. C. 538; State v. Crowley, 13 Ala. 172; People v. Girdler, 65 Mich. 68; People v. Davis, 52 Mich. 569; People v. Hendricksen, 53 Mich. 525; People v. Fowler, 104 Mich. 449.

This is a case wherein though there might be some evidence to sustain every material allegation of the

indictment, yet at the same time the evidence might be so very slight as to justify an appellate court in reversing the judgment rendered thereon.

> Territory v. Webb, 2 N. M. 157; Weems v. State, 84 Ga. 461; State v. Pope, 109 N. C. 849; State v. Cheney, 110 Ia. 199; State v. Way, 6 Vermont 311; State v. Waller, 80 N. C. 295.

Mere suspicions and neighborhood rumors are not sufficient to sustain an indictment.

> 2 McClain's Criminal Law, sec. 1095.

All the elements which constitute a crime must be charged with certainty in the indictment even where adultery is the offense.

> Edwards v. State, 10 Tex. App. 25; United States v. Carll, 105 U. S. 611; Pettibone v. United States, 148 U. S. 202; Evans v. U. S., 153 U. S. 584.

In an indictment for committing an offense against a statute, the offense may be described in the general language of the act, but the description must be accompanied with a statement of all the particulars essential to constitute the offense or crime, and to acquaint the accused with what he must meet on the trial.

> United States v. Hess, 124 U. S. 483; Evans v. United States, 153 U. S. 584.

What is adultery?

> 1 Bish., New Crim. Proc., sec. 419; 2 McClain Crim. Law, 1086; 1 Am. and Eng. Ency. of Law (2 Ed.), 747 and 750.

An indictment charging adultery only by name is bad.

> Whar. Crim. Pl. and Pr., secs. 153-154-221; Bish. Directions and Forms, secs. 147 and 149; McCan's Admr. v. Righter, 12 S. E. 497; State v. Meyers, 99 Mo. 107; 1 Bish. New Crim. Proc., secs. 480-477 and 478.

No allegation can be rejected as surplusage, if it is

·descriptive of the identity of what is legally essential to the charge.

> United States v. Brown, 3 McLean (U. S.) 233; United States v. Howard, 3 Summ. (U. S.) 12.

The general rule is that a quashal of an indictment can not be had for formal defects unless upon a motion *in limine*.

> Hughes' Criminal Law and Proc. 1756; State v. Meyers, 99 Mo. 107.

Such motion is in order without any withdrawal of pleas at any time down to the rendition of the verdict.

> 1 Bish. New Crim. Proc., sec. 762 and note 1, pp. 452, 453.

The statute of limitations applicable to the indictment in this case is as follows: "No person shall be prosecuted, tried or punished for any offense not capital, unless the indictment is found within three years next after such offense shall have been committed.

> R. S. United States 1879, sec. 1044.

The commission of adultery may be proved only as ·of some time within the statute.

> Commonwealth v. Cobb, 14 Gray 57; State v. Williams, 76 Mo. 480; 1 Bish. New Crim. Proc., sec. 400, 11 Ency. Pl. and Pr., p. 167.

Among the instructions given by the court to the jury was the following: "If on the other hand you find from the evidence beyond a reasonable doubt that the defendants, within three years previous to March 1, 1901, occupied the sleeping apartment alone as a sleeping-room, that circumstance alone raises a presumption of guilt." It is a ground for a new trial if the judge expresses himself as to inference of fact so that the jury understand him to be stating principles of law, and is not cured by other correct instructions.

> Wh. Cr. Pl. and Pr., secs. 798, 709, 710 and 794; People v. Wong Ah Ngow, 54 Cal. 151; Warren v. State, 22 Tex. App. 392; State v.

Williamson, 42 Conn. 263; Skidmore v. State, 43 Tex. 96; The ,Little Miami, etc., R. Co. v. Wetmore, 19 O. 111; People v. Bodine, 1 Denio 283; Archbold Cr. Pl. and Ev., p. 148; 1 Greenleaf Ev., chap. 4, p. 21; State v. Way, 6 Vt. 311.

The weight and effect of the testimony are solely for the jury and not for the court to suggest or declare.

State v. Philpot, 66 N. W. 730-732; Phillips v. Roberts, 90 Ill. 492; Moore v. Wright, 90 Ill. 470; State v. Bailey, 60 N. C. 137; 11 Ency. Pl. and Pr., p. 188.

It is error for the court in any case where a legal presumption does not exist to instruct the jury that one fact may be inferred from another.

People v. Carrillo, 54 Cal. 63; State v. Way, supra; Bradshaw v. People, 153 Ill. 156; John Williams v. State, 11 Tex. App. 275; Allison v. State, 44 Ind. 354; 11 Ency. Pl. and Pr., p. 185.

The only presumption in a criminal case is of the innocence of the defendant until guilt is established beyond a reasonable doubt.

People v. Douglas, 100 Cal. 1; Coffin v. United States, 156 U. S. 447; Richelieu, etc., Nav. Co. v. Boston M. I. Co., 136 U. S. 408; Rio Grande Western R. Co. v. Leak, 163 U. S. 280; Hickory v. United States, 160 U. S. 408; Alberty v. United States, 162 U. S. 499. .

An erroneous instruction prejudicial to the defendant even though not excepted to on the trial is ground for a motion for a new trial.

Maddox v. State, 12 Tex. App. 429; Ayers v. State, 21 Tex. App. 253.

WILLIAM B. CHILDERS, United States Attorney, for appellee.

Where a statute of limitations was pleaded, the plaintiff was permitted to begin with proofs of acts of adultery committed more than six years preceding; as

United States v. Griego.

explanatory of acts of indecent familiarity within the time alleged.

> 2 Greenleaf on Evidence, sec. 47 and cita-
> tions.

The indictment was sufficient.

> Helfrich v. Commonwealth, 33 Pa. St. 68;
> 75 American Decisions 579; The Leading Crim-
> inal Cases by F. F. Heard, vol. 2, p. 288.

The word "adultery" implies *per se*, that one of the parties is married.

> The Leading Criminal Cases, supra.

Where the state proved enough to require the defendant to introduce evidence in his own behalf it would be improper to direct a verdict for the defendant.

> State v. Jones, 18 Oregon 256, 22 Pac. 840.

If the evidence tends to prove certain facts the party in whose behalf it is given has a right to have the jury instructed on the hypothesis of such facts, and leave it to the jury to find whether the evidence is sufficient to establish the facts supposed in the instruction.

> Sackett on Instructions to Juries, p. 16;
> Griel v. Marks, 51 Ala. 566; Kendall v. Brown,
> 74 Ill. 232; Commonwealth v. Clifford, 145
> Mass. 97, 13 N. E. 345; People v. Jones, 55 Pac.
> 698; Dunbar v. U. S., 198.

Presumptions of fact are but inferences drawn from other facts and circumstances in the case and should be made upon the common principles of induction.

> Lawson on Presumptive Evidence, p. 556;
> Carotti v. State, 42 Miss. 334; Evans v. Evans,
> 41 Cal. 103.

### STATEMENT OF FACTS.

In this case the appellant and Petra Romero were indicted for adultery, and at the September term, A. D., 1901, of the United States court in said district, were placed upon trial before Hon. Daniel H. McMillan, as-

sociate justice of the Fifth judicial district, presiding in the absence from the Territory of the judge of the First judicial district. The trial resulted in the conviction of the appellant under the first count of the indictment, which charged adultery. The usual motions for a new trial and in arrest of judgment were made and overruled by the court, and the appellant was sentenced to the Territorial penitentiary for a term of one year and one day, from which judgment and conviction he appealed to this court.

OPINION OF THE COURT.

McFIE, J.—At the trial in the court below, counsel for appellant moved to quash the first count of the indictment, which motion was overruled, and counsel also raised the same objection after the conviction of the appellant in the motion in arrest of judgment, which was also overruled and exception saved. The objection to the indictment is that it does not contain the words, "sexual or carnal," but simply uses the words "unlawful intercourse." This prosecution is under the laws of the United States, and it will be observed that under the laws of the United States the crime of adultery is not specifically defined. The language of section 3, chap. 397, acts of March 3, 1887, being as follows: "That whoever commits adultery shall be punished by imprisonment in the penitentiary not exceeding three years, and when the act is committed between a married woman, and a man who is unmarried both parties to such act shall be deemed guilty of adultery, and when such act is committed between a married man and a woman, who is unmarried, the man shall be deemed guilty of adultery."

There is no attempt to further specify the meaning of the word "adultery" under the laws of the United States, and the reason for this is no doubt, that the

term "adultery" is so universally understood to mean sexual intercourse, that it is deemed unnecessary to add any other words, by way of definition, except those concerning the material relations of the parties. The words "adultery," "fornication," "cohabitation," "bigamy" and "polygamy" are kindred offenses within the meaning of the laws of the United States, having reference to the improper relations of the sexes under the guise of religion, in the Territory of Utah, but which applies with equal force to all the Territories where the United States has jurisdiction. In the case of Davis v. Beeson, 133 U. S. 333, the question before the court was, whether the first article of amendment to the constitution, that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof" should be a protection against legislation for the punishment of acts which now constitute the offenses above referred to. It was seriously contended in that case, that the practices which the United States laws declared to be polygamy, bigamy and unlawful cohabitation, etc., were tenets of the religion of the Mormons, and hence the United States had no authority to declare the same to be crimes and inflict punishment therefor. But the Supreme Court of the United States speaking by Mr. Justice Fuller, quotes approvingly the case of Raynolds v. The United States, 98 U. S. 145, and says: "In that case the defendant was indicted and convicted under section 5352, Revised Statutes, which declared that 'every person having husband or wife living who marries another, whether married or single, in a Territory or other place over which the United States has exclusive jurisdiction, is guilty of bigamy, and shall be punished by fine not more than five hundred dollars and by imprisonment for a term of not more than five years.' The court after referring to a law passed in December, 1788, by the State of Virginia, punishing bigamy and polygamy with death, said that from that day, there never had been a time in any State of the Union when

polygamy had not been an offense against society cog-
nizable by the civil courts and punished with more or
less severity."

In the case of the United States v. Higgerson, in the
United States Circuit Court for the district of Idaho—
which was a case where the charge was unlawful cohab-
itation—in regard to the trial of such offenses as well
as of its kindred offenses of adultery and bigamy, as
defined by the laws of the United States, uses the fol-
lowing language:

"The statute is to prevent even the appearance of
evil, and as said by the Supreme Court of the United
States, it is to prevent a man from flouting in the face
of the world the ostentation and opportunities of a big-
amous household with all the outward appearance of the
continuation of the same relations which existed before
the act was passed."

Thus it will be seen that under the laws of the
United States, as interpreted by the courts of the United
States, bigamy, unlawful cohabitation, adultery and for-
nication are all deemed kindred offenses, and the laws
applicable to one, in a general sense, are also applicable
to the others, the words "unlawful intercourse" under
the authorities must be held in a criminal case to be
equivalent to the words "adultery" and "fornication,"
and it would add nothing to the charge in the indictment
if the words, "sexual or carnal" were used in connection
with the words "unlawful intercourse." The words
"adultery" and "fornication" both imply and express the
act of sexual intercourse, but the law defined the mate-
rial relations of the parties to be stated, as a means of
classifying the offenses. In Smitherton v. State, 27 Ala.
23, the court said the term "adultery," as used in our
code, should be construed with reference to the subject-
matter with which it stands connected. When used
with reference to divorce, it is to be taken in the canon-
ical sense of that term, and it embraces the infidelity
of the husband to his wife; but when considered with

reference to the criminal law, it imports such sexual intercourse as violates another man's bed. Commonwalth v. Calt, 21 Pick. (Mass.) 509; State v. Armstrong, 4 Minn. 335; State v. Connoway, Tappan (Ohio) 90. In the case of State v. Hinton, 6 Ala. 864, it is said: "Where adultery consists in the illicit commerce of the persons of different sexes, one of whom at least, is married, it has been held unnecessary to allege that the other person is married, since the term 'adultery' implies that fact without further allegation." 116 U. S. 55.

In the case of Cannon v. The United States, the court in referring to the meaning of the word "cohabitation" gives the definitions of the term by Webster, and Worcester, which are practically the same. The definition given by Worcester is as follows: "First. To dwell with another in the same place. Second. To live together as husband and wife." The word is never used in its first meaning in a criminal statute, and its second meaning is that to which its use in this statute has relation.

In the case of Helfrich v. Commonwealth, 33 Pa. St. 68, the court in passing upon a motion in arrest of judgment on the ground that the indictment did not charge that the defendant had carnal knowledge of the body of Matilda Moyer, etc., the court said: "We are not convinced by the learned argument of the defendant's counsel. Our statute of 1705 makes fornication and adultery punishable; but it does not define them. Why? Evidently because the words were so well understood that a definition was not thought of . . . . ; in describing the offense in an indictment no greater particularity has heretofore been required than is found here, and this ought to be enough to sustain this indictment; . . . . 'commit adultery' does not merely imply, but expresses carnal knowledge, for that is its very meaning; having carnal knowledge is but a euphemism of it." 75 Am.

Dec. 579; Leading Crim. Cases by F. F. Heard, vol. 11, page 288.

Referring to the first count of the indictment, to which the appellant objects, it will be found that the count alleges that "Griego was a married man, having a wife in full life; that he and the defendant Petra Romero were not then married to each other." Then follows the charge that "they did unlawfully commit the crime of adultery by then and there having unlawful intercourse with each other contrary to the form of the statute," etc. The indictment, therefore, charges that the appellant did commit the crime of adultery by having unlawful intercourse with the defendant Petra Romero. This being a criminal case, and a prosecution under a criminal statute, the charge that the appellant committed the crime of adultery by having unlawful intercourse, clearly means such sexual intercourse, as the word adultery expresses. The appellant is presumed to know the law, and the use of the words "sexual or carnal" could give him no fuller meaning of this charge than that given by the use of the words contained in the indictment. Ordinarily it is sufficient to define a statutory crime in the language of the statute, and the indictment in this case certainly includes the language of the statute, but it is not even necessary to use the exact language of the statute, as language equivalent thereto will be sufficient. Territory v. Ruiz, supra. But the indictment here does more than that, in defining the manner of the commission of adultery to be that of having unlawful intercourse, and in our opinion, the motions to quash the indictment and in arrest of judgment were properly overruled.

The admission of the testimony of the witness, Cruz Martines, is assigned as error. The contention of counsel seems to be that Martines's testimony was incompetent and immaterial, because in point of time it related to occurrences about four years before the indictment was found. This objection is not well taken,

because offenses of this kind, circumstances may be given in evidence as tending to show improper relations or conduct between the parties. "Acts tending to show adulterous connection and anterior to the statute of limitations, are admissible in support of evidence of the commission of the act charged." State v. Guest, 100 N. C. 410; State v. Potter, 52 Vt. 33; People v. Hendrickson, 53 Mich. 525.

In Commonwealth v. Morris, 1 Cush. (Mass.) 391, the exact date of the acts sought to be proved was in doubt. It was held, however, that the evidence was admissible, and that the nearness of time was a circumstance affecting the effect of the evidence, and not its competency. Where the statute of limitations was pleaded, the plaintiff was permitted to begin with proofs of acts of adultery committed more than six years preceding, as explanatory of acts of indecent familiarity, within the time alleged. 2 Greenleaf on Evidence, section 47 and citations. The evidence was competent, in our judgment, and it was not error for the court to admit it.

The objection that the court erred in overruling the motion of appellant's counsel for instructions to find appellant not guilty at the close of the evidence of the prosecution, is not ground for reversal, nor was the overruling of the motion to instruct for the appellant at the close of the evidence for the defense. There were several witnesses who testified concerning the relations existing between the appellant and the woman, Petra Romero. It was shown that Griego was at the time charged, a married man; that the woman, Petra Romero, was a widow; that the appellant did not live with his wife and children whom the testimony showed resided in Colorado, but did live for a period of several years with Petra Romero, to all appearances, as husband and wife. Mrs. Romero owned a house of three rooms, one of which was used as a kitchen or storeroom; another of these rooms was rented to and occupied by

one David Allen for a period of about three years, and
that the appellant lived and slept in the third room for
a period of twelve years, according to the admissions of
the defendants themselves. All of the witnesses for the
prosecution testified to seeing the appellant and this
woman occupying that room, and knew that they slept
there; some of them saw them in that room alone and at
other times Petra Romero's children were also in the
room which was used as a sleeping room for the family.
The witness H. W. Easton, saw the appellant and this
woman enter a room alone at night and shut the door
after them, and the next morning the appellant was
standing by the side of the door of the room while the
woman was arising from the bed and sitting on the edge
of it putting on her shoes. The witnesses also testified
to his bringing provisions and shoes to the house as a
husband would do. The testimony also showed that in
the summer time beds were put out in front of the house
on the ground, and that sometimes the mattress or bed
of the appellant would be side by side with the bed of
the woman Petra Romero. The testimony further shows
on behalf of the prosecution that the appellant and the
woman Petra Romero traveled about from place to place
together, and wherever they were seen they occupied the
same room. On behalf of the defense, the only witnesses
were the defendants themselves. Each of them admitted
that they had lived together for the past twelve years,
and had traveled about together as testified by the wit-
nesses for the prosecution, but they denied that they
had ever had sexual intercourse with each other, and
claimed that the room in Petra Romero's house where
they slept was used also by Petra Romero's grown chil-
dren as a sleeping room, and that her children were
always in the room when the appellant and the woman
were together. Therefore, from this evidence, it appears
that there was a conflict in the evidence which the jury
alone had the authority to determine, and that it was
the province of the jury and not of the court to weigh

this evidence and determine what it established beyond
a reasonable doubt, and to determine the credibility of
the witnesses testifying in the case. Obviously it would
haave been improper for the court to have taken the case
from the jury at any time after the evidence for the pros-
ecution was in, for the reason that facts and circum-
stances had been testified to, which, in a case of this na-
ture, were for the consideration of the jury, and the
court would not have been warranted in withdrawing
from their consideration the testimony of the several
witnesses tending to establish relations of an adulterous
nature between these defendants at the close of the tes-
timony for the prosecution, nor at the close of the evi-
dence for the defense, which simply disclosed an irrecon-
cilable conflict in the evidence which was the peculiar
province of the jury to determine.

The last assignment of error seems to be the most
serious one in the estimation of counsel for the appel-
lant, for the reason that it was about the only one which
the counsel insisted upon in the oral argument of the
case, and it was evident that his reliance for reversal
depended upon his assignment of error designated
by the letter "A." In this assignment counsel con-
tended that the court erred in giving the following
instruction; "If, on the other hand you find from the evi-
dence beyond a reasonable doubt that the defendants
within three years previous to the first of March, 1901,
occupied the sleeping apartment alone as a sleeping
room, that circumstance alone raises a presumption of
guilt."

The argument of counsel is that this instruction
nullifies the presumption of innocence, and virtually di-
rects the jury to find against the defendant. The coun-
sel in his argument upon this assignment of error,
seems to regard the evidence in the case as very trivial,
because he says that there was no sufficient evidence to
justify the suggestion that they did occupy the sleeping
room alone. In the first place the counsel selects what

upon its face, purports to be only a part of an instruction covering the subject. The use of the words. "If, on the other hand," clearly shows this fact. The other portion of the instruction which counsel has not seen fit to quote, is this: "If you believe from the evidence before you that the whole family, or some portion thereof regularly and at all times occupied the family sleeping room in common with the defendants for three years prior to March 1, 1901, then there is no presumption of guilt."

Taking this instruction as a whole, it is very evident that the court intended to submit to the jury, in this instruction the law applicable to the case, both from the standpoint of the United States and the defendant. This is a correct way of submitting a case to the jury, in a case where the evidence is conflicting. Indeed, the parties have a right in such a case to have the case submitted to the jury, upon competent evidence submitted by either party to the case. Sackett in his work on Instructions to Juries, at page 16, says: "When the evidence tends to prove a certain state of facts, the party in whose favor it is given, has a right to have the jury instructed on the hypothesis of such state of facts and leave it to the jury to find whether the evidence is sufficient to establish the facts supposed in the instruction." Griel v. Marks, 51 Ala. 566.

The court gave the first part of this instruction as the law of the case in the event that the jury, after considering all the evidence in the case, determined to find the defendant not guilty; and appellant would not and he does not object to that part of this instruction which we have last above referred to, for the reason that it is very strongly in the appellant's favor. But this part of the instruction makes clear the purpose of the court in giving the second portion of the instruction, which was evidently given as the law, if, after the jury had considered all the evidence and weighed it, they believed that a case had been made out against the appellant,

that they would be warranted in so finding. The court did not comment upon the evidence in the case, and the instruction is not subject to that objection, although in courts of the United States considerable latitude is allowed the court in its instructions to juries; nor did the court invade the province of the jury by instructing them in respect-to matters of fact; the jury were left perfectly free to determine for themselves what the facts were as to the appellant's occupying with the defendant, Petra Romero, and alone, a certain room in that house as a sleeping room, under all the circumstances disclosed by the evidence in the case, and having in mind the prior instructions of the court giving the appellant the full benefit of every reasonable doubt, and also having in mind the instruction of the court that the appellant was presumed to be innocent until his guilt was established by the evidence beyond a reasonable doubt.

It is true that a jury must regard a defendant as innocent until his guilt has been shown to the exclusion of a reasonable doubt, but it is only a presumption which requires a jury to so regard the defendant. The law raises this presumption in the absence of evidence to the contrary, and in all cases, no matter how aggravated the case may be, but this presumption must yield to evidence which satisfied the jury beyond a reasonable doubt of the guilt of the defendant, and in a case of this nature, a jury is warranted in returning a verdict of guilty in the absence of positive and direct evidence as to the commission of the overt act, where the evidence and circumstances are such as show the intimate relations of the parties charged that the jury may legally infer guilt. In this respect a case of this nature is peculiar, and the law governing the trial and conviction of defendants, is somewhat different from that which governs the courts and juries in other than such exceptional cases. A long line of authorities might be referred to here to the effect that it is not necessary to a conviction of the crime of adultery that specific acts of carnal intercourse between

the parties shall be proven by direct evidence such as that of a witness to the act itself. Experience of courts in dealing with cases of this nature, has shown that cases are very rare indeed in which such evidence can be produced in court, and, therefore, a different rule must obtain in the interest of justice as to the character of evidence which will warrant a jury in returning a verdict of guilty in the absence of direct evidence.

"Presumptions of fact are but inferences drawn from other facts and circumstances in the case, and should be made upon the common privileges of induction." Lawson on Presumptive Evidence, page 556.

It has been repeatedly held that evidence wholly circumstantial may be sufficient to support a conviction. In the case of Commonwealth v. Gray, 129 Mass. 447, the court said: "In almost every case of adultery the fact of carnal intercourse is inferred from circumstances." To the same effect is State v. Chancey, 110 N. C. 507; Commonwealth v. Mozier, 135 Pa. St. 221; Cole v. State, 6 Baxt. (Tenn.) 239; Baker v. United States, L. Pinn. (Wis.) 641. In State v. Chancey, 81 N. W. 454, a case in Iowa decided in 1900, it was held that positive proof of the act of adultery is not required, and from the nature of the offense it is not easily made. State v. Eliason, 91 N. C. 564; Crane v. The People, 168 Ill. 395. In the case of Stewart v. State, 43 S. W. 979, the defendant traveled over the county in a peddler's cart taking with him a woman whom he presented as his wife; this was held sufficient evidence to convict of adultery without any eyewitness to an act of intercourse. In the case of Commonwealth v. Clifford, 145 Mass. 97, the court held that the jury were properly instructed that if a married man was found with a woman not his wife in a room with a bed in it, and stayed through the night with her, it was sufficient to warrant a finding of adultery against him. Richardson v. State, 34 Tex. 142; State v. Austin, 108 N. C. 780; Blackman v. State, 36 Ala. 295; Gardner v. State, 81 Ga. 144; State v. Way,

5 Neb. 283. All that seems to be necessary in order to warrant the jury in finding a defendant guilty of adultery, is that the circumstances shown by the evidence are such as to lead the guarded discretion of a reasonable and just man to the conclusion of guilt. Thayer v. Thayer, 101 Mass. 113; State v. Way, supra.

From the cases above cited, it is held that a jury may infer the guilt of a defendant from circumstances such as a man and woman not married to each other living and sleeping in the same room, and various other circumstances such as going about from place to place with each other; being frequently in each other's company; acting apparently as if they were husband and wife, and other circumstances showing opportunities for an adulterous relation to exist, and which in the nature of things, juries have a right to presume did exist. The inference of guilt which a jury is warranted under these decisions to make in the absence of direct proof of the commission of the offense is nothing more nor less than the presumption of guilt which, under the law, the jury may accept as sufficient to overcome the presumption of innocence. If the court had used the word "inference" instead of the word "presumption" in this instruction, it would have been clearly within the purview of the cases above cited, and if there is any distinction, it is simply a technical one which was not calculated to deceive or mislead the jury. Ordinarily in criminal cases there is no presumption of the defendant's guilt, and presumptions are not to be indulged, but owing to the secrecy in which crimes of the nature of adultery are committed, and the great difficulty of securing evidence, such as is necessary to warrant in many other cases, inferences and presumptions may be indulged where the facts and circumstances warrant such inferences in cases of this nature. It will be observed in examining the authorities above cited, that the inference of guilt has been specifically authorized and sustained in cases where a married man and woman

who is not his wife, have occupied a room alone for the purpose of a sleeping room, and a conviction was sustained. In some of the cases above referred to, upon proof that the parties were seen to enter a room alone at night and remain together during the night, inference of guilt by the jury and conviction were sustained. A conviction was also sustained in the State of Texas, where a man and woman were travelling about from place to place in a cart, although there was no testimony to any act of adultery between them. In the case at bar, the defendants were seen to enter the room alone at night, and the appellant was seen standing at the door in the morning when the woman was rising from her bed and putting on her shoes. The fact is undisputed that these parties lived together and slept in the same room for many years, and that the appellant was living apart from his wife all these years; that they travelled about from place to place as if husband and wife, and wherever they went they appeared to live together as husband and wife; and although the defendants denied the actual commission of the act charged, the jury were undoubtedly warranted in their inference of guilt, if, under the circumstance shown by the evidence, they were so satisfied of guilt beyond a reasonable doubt. It will be observed that the court simply instructed the jury in the portion of the instruction objected to, that "If the defendants occupied the sleeping apartment alone as a sleeping room, that circumstance alone raises a presumption of guilt." These words standing alone would be very questionable.

But the instructions taken as a whole, were very favorable to the appellant, in that the jury were told that the appellant was presumed to be innocent, and that they would not be warranted in finding the appellant guilty unless they were satisfied of his guilt of having sexual intercourse with the defendant, Petra Romero, beyond a reasonable doubt.

And as to the character of the evidence, the court

instructed the jury that "direct proof of sexual intercourse between the defendant is not necessary in order to justify the jury in finding a verdict of guilty, but evidence is necessary which is sufficient to show circumstances from which the jury may infer the guilt of the parties, that is, such circumstances as would lead the guarded discretion of a reasonable and just man to conclusions of guilt. There is, however, no presumption of guilt, unless such circumstances are shown by the government as would justify a reasonable person to be satisfied beyond a reasonable doubt that the defendants had sexual intercourse with each other within three years previous to March 1, 1901."

We are of the opinion, that the instructions objected to, were proper instructions, and that there was no error in giving them.

Counsel for appellant assigns for error, the court's charge to the jury "that if the offense was committed within three years prior to the first day of March, 1901, then the jury were permitted to include in their consideration fourteen days not properly included within the period of the statute of limitation, for the reason that the indictment was returned into court on the fourteenth day of March, 1901, and the period of limitation should have been stated to be three years from that date. Upon conviction of the appellant in the court below, the presumption of innocence in his favor ceased. Therefore in the appellate court it must be shown not only that error occurred in the trial court, but that such error was prejudicial to the appellant. This has not been made to appear upon the record presented to us in this case. The evidence disclosing the fact that the appellant and Petra Romero lived and associated together and slept in the same room for many years, including the three years rightfully within the statute of limitation, and while counsel may suggest that the offense, if committed at all, was committed during the fourteen days, which he claims were not within the statute, there is nothing upon

this record to justify the court in so concluding, but much that would justify the court in concluding that the offense was committed within the three years prior to the return of the indictment. But counsel admit that this matter was not brought to the attention of the court below in the motion for a new trial, but was discovered by him after the motion for new trial had been over-ruled, and was for the first time raised in this court in the assignment of errors. This court has repeatedly held that errors alleged to have been committed in the trial court to which no exception was taken and brought to the attention of the trial court, will not be heard in this court. This assignment of error falls clearly within the decisions of this court to that effect, and even if merit was conceded to this assignment, it can not avail the appellant when raised in this court for the first time.

There being no error disclosed by the record in this case, the judgment of the lower court will be affirmed with costs.

Mills, C. J., and Baker, A. J., concur.   Associate Justice McMillan who tried the case below, did not sit in this case during the argument.

———

PARKER, J.—I dissent on the ground that the instruction, that the fact that defendants occupied a sleeping apartment alone as a sleeping room raised a presumption of guilt, was a direct invasion by the court of the province of the jury. Conclusive as such fact might be, the jury, not the court, should draw the inference. Bush, Stat. Crimes, sec. 689.