## STATE v. ODEKIRK.

No. 3436.   Decided June 9, 1920.   (190 Pac. 777.)

1. ADULTERY—MAY BE PROVED BY CIRCUMSTANTIAL EVIDENCE. In a prosecution for adultery, the guilt of defendant may be established by circumstantial evidence without the testimony of any witness who saw the act, or admissions of the accused or his accomplice.

2. ADULTERY—EVIDENCE HELD SUFFICIENT TO SUSTAIN CONVICTION. Circumstantial evidence that defendant, partially undressed, was in the room with a girl to whom he had previously shown undue attention and written amatory letters, at two a. m., *held* sufficient to sustain conviction for adultery, though the evidence as to those circumstances was contradicted.

Appeal from District Court, Fourth District, Duchesne County; *A. S. Morgan*, Judge.

George C. Odekirk was convicted of adultery, and he appeals.

AFFIRMED.

*Chas. De Moisy*, of Vernal, and *Fred L. Watrous*, of Duchesne, for appellant.

*Dan B. Shields,* Atty. Gen., and *O. C. Dalby, Jas. H. Wolfe, H. Van Dam, Jr.,* and *D. M. Draper,* Asst. Attys. Gen., for the State.

CORFMAN, C. J.

Defendant was convicted of the crime of adultery. After a denial of his motion for a new trial he appeals. He complains that the evidence was insufficient to justify the verdict of the jury, and that the verdict was contrary to law.

The evidence upon which a conviction was based was wholly circumstantial. In substance, it tends to show that on February 8, 1919, the date upon which the alleged offense was charged in the information as having been committed, the defendant was a married man residing at the town of Duchesne, Duchesne county, Utah, where he had been engaged in the business of merchandising. He was also the lessee of the Duchesne Hotel at said place. The record is not clear as to whether he had anything to do with the actual management or the conducting of this hostelry. His wife and children resided elsewhere at Duchesne. Defendant's alleged paramour on the night of February 7-8, 1919, occupied room 24 at said hotel. Room 23, adjoining and connected by a door, was occupied by other guests at the hotel. Both of these rooms opened into hallways, the former to the south, the latter to the north. The defendant testified that he occupied room 22, across the north hallway to the east. Other witnesses testified that room 22 was occupied by one Burt on the night in question. Joseph E. Murray, the city marshal of Duchesne, testified that on February 8, at about two o'clock A. M., he, with a deputy, accompanied by the defendant's wife, went to the hotel and knocked upon the door of room 24. The knock was answered by a voice from within room 24, which voice he says he recognized as being that of the defendant, saying, "Who's there?" After two or three minutes waiting, the witness heard shuffling about the room, and then the rattling of the lock to the door leading from room 24 to room 23; that he then commanded the deputy to go to and watch the north hallway, which

the deputy did.  A moment later the defendant emerged from room 23, and appeared in the north hallway without a coat or hat; his shoes were untied, and he was buttoning his trousers.  He was immediately placed under arrest and taken to the jail.  Shortly after taking the defendant to jail the marshal forced the outside door of room 24, and the alleged paramour was found in the act of destroying letters testified to as being in the handwriting of the defendant.  These letters were received in evidence, and they tend to show that the defendant was unduly enamored with the occupant of the room.  There is also much evidence tending to show that on numerous occasions the defendant had been unduly attentive to the girl occupant of room 24.  Defendant in his own behalf testified that he had not been in room 24 on the night in question; that when he stopped at the hotel he usually occupied room 10; that he had anticipated a search would be made for him that night, and for that reason he had gone to room 22 and retired to evade being found at the hotel by the officers and his wife; that he heard the disturbance made by the officers, had arisen, and passed out of room 22 into the north hallway to ascertain the cause, when he was met by the officers and placed under arrest.  The occupant of room 24 also testified that the defendant had not been in her room, and that it was she who had called out, ''Who's there?'' in response to the marshal's knocking on her door.

There is no direct evidence in the record that an act of sexual intercourse was committed by the defendant, as charged in the information.  As heretofore remarked, the evidence upon which a conviction was based is purely circumstantial.

The defendant contends:

"The essential element of the crime of adultery is in the act of sexual intercourse, and hence the corpus delicti must be proven. In order to support a conviction for adultery there must be present certain evidential features, to wit:  (a)  The direct testimony of a witness or witnesses who saw the perpetration of the act;  (b) confessions or admissions of the defendant as to his guilt, sufficiently explicit as to the time and place charged;  (c)  circumstantial evidence of the commission of the act of sexual intercourse

which clearly and unmistakably points to the guilt of the defendant; or (d) the testimony of an accomplice supported by independent corroboratory testimony."

No witness testified to seeing the act complained of, the defendant made no admission or confession, and the alleged paramour, as well as the defendant, denied its commission. However we do not understand that counsel for the defendant makes the contention that all of these features must combine in order to prove the commission of a crime of this nature, but merely that the evidence upon which the state relies must give rise to more than mere conjecture or suspicion that the crime was committed. In other words, defendant contends that there must be something more proven than mere opportunity or suggestive circumstances in order to establish the offense. Such may be conceded, and yet in this class of cases, from the very nature of the crime, no conviction could be had in a great many cases unless the commission of the crime may be established by proof of the attending circumstances. The general rule is aptly stated in 2 C. J. at page 22, to be "that the crime may be sufficiently established by proof of circumstances from which the jury may reasonably infer the guilt of defendant."

We are not prepared to say, under all the circumstances disclosed by the evidence in the record now under consideration, that the jury might not reasonably infer the guilt of the defendant. It would in our opinion, be a very difficult matter indeed for fair-minded men to say that a married man with eight children, who admittedly is seen in company with a young woman on numerous occasions, writes her letters of endearment, takes a room at the same hotel where she is stopping, sleeps there away from his family without excuse for doing so, and is found emerging from her room at two o'clock in the morning after becoming alarmed by the peace officers, when both are found partly disrobed, does not give rise to a just inference that an act of unlawful sexual relation had been committed. True it is that the evidence was oftentimes in conflict, but, never-

theless, it was the province of the jury, as the triers of the facts to determine its weight, as in other criminal proceedings.

We do not think upon the record before us the court below committed error in overruling defendant's motion for a new trial, nor in entering judgment against the defendant upon a finding of guilt by the jury.

It is therefore ordered that the judgment of the district court be affirmed.

FRICK, WEBER, GIDEON, and THURMAN, JJ., concur.