(No. 6254.   November 2, 1935.)

STATE, Respondent, v. H. H. RICHARDSON and MAY BIRD, Appellants.

[50 Pac. (2d) 1012.]

Earl E. Garrity, for Appellants.

Bert H. Miller, Attorney General, and Ariel L. Crowley, Assistant Attorney General, for Respondent.

BUDGE, J.—Appellants were informed against, tried and convicted of the crime of adultery, and appeal.

Since the first two assignments relate to the sufficiency of the evidence it appears proper to recite in some detail the evidence adduced on behalf of the state. The wife of appellant Richardson had been in California for some three months and upon returning went to the house of a neighbor from which point she kept watch of her own house just across the alley. Appellant Richardson came to the house about 6 o'clock in the evening and then went away in the car and returned at about half-past 7 with appellant Mrs. Bird and both entered the house and there remained. About half-past 11 Mrs. Richardson called the police and Officers Brown and Tritt were met by her at 11:35 o'clock and they then went to the Richardson home. Mrs. Richardson opened the front door with her key and she and Brown entered. Mr. Brown heard some noise as they reached the bedroom door and Mrs. Richardson stated she heard something "like the bed squeaking; like someone jumping out." There were no lights on in the house. They then entered the bedroom and found appellant Richardson in bed, the bedclothing turned back on one side and "The opposite side of the bed showed the impression of a body and the head on a pillow." Richardson was attired only in a union suit. Mrs. Richardson asked: "Where is that woman that is here?" and appellant Richardson answered: "There is no woman here." Shortly thereafter Mrs. Bird was found in the closet off the bedroom in which Richardson was found, she clothed only in a dress, and without underwear, shoes or stockings. When found Mrs. Bird said, according to Mrs. Richardson: "Why Mrs. Richardson, you are a fool to come here and make a fuss like this. Don't you know that your husband will lose his job?" The

witness Brown stated that on being found Mrs. Bird made the statement: ''She said she would accept all the blame, she was to blame but she didn't want Mr. Richardson to lose his job, words to that effect.'' Officer Tritt, who came in later, stated Mrs. Bird made the statement that ''she would take the blame; it was all her fault.''

There is further testimony that Mrs. Bird was seen approaching the Richardson house on numerous occasions, always approaching by way of the alley and entering the back door, and that the blinds were always down. Mrs. Bird was seen driving Mr. Richardson's car on several occasions, usually Mr. Richardson being along, but sometimes Mrs. Bird being alone. There is evidence that Mrs. Bird lived at at least three different places in Caldwell over a period of several months and at each of these places had a room or rooms with but one bed, and that Mr. Richardson called upon her frequently at these places, usually on Saturday evenings and was seen leaving on Sunday afternoons or Mondays. At these places Mrs. Bird referred to Mr. Richardson as ''her husband,'' ''her man'' or ''Dick,'' and upon at least one occasion Richardson. was addressed by one witness as Mr. Bird, spoke in return and made no correction or disavowal. Richardson's association with Mrs. Bird had extended over a period of approximately three years, he first meeting her at Huntington, Oregon, and the relationship thereafter was of an intimate character. Richardson himself admitted that Mrs. Bird had been to his home on two occasions and that he had seen her at Huntington, at the Union Hotel, Palace Hotel and Roberts Apartment House in Caldwell, and at the Home Hotel and on the street in Boise. After Mrs. Bird left Huntington and while she resided at the various places above referred to she was unemployed. Without going into detail, the record discloses a flat contradiction between the testimony of Mrs. Bird and certain state's witnesses, touching the conduct, movements and intimacy of the relationship existing between Mrs. Bird and Richardson. In view of the verdict it may be said that her testimony was impeached in several important particulars. Both Richardson and Mrs.

Bird denied the commission of the offense charged and Richardson denied having seen much of Mrs. Bird during the previous two years, testifying Mrs. Bird was at his home on but two occasions and sought to explain that their conduct was innocent on the theory that Mrs. Bird was employed to clean house and perform other domestic duties for him. The testimony of Richardson in this respect was not accepted by the jury, which found both Richardson and Mrs. Bird guilty of the charge laid in the information, from which verdict, and the judgment based thereon, and from an order denying a motion for new trial, this appeal is prosecuted.

Coming now to the assignments of error; specifications (1) and (2) are that the evidence is insufficient to sustain the verdict and that the verdict is contrary to law and the evidence upon the ground that the evidence is circumstantial and does not meet the requirements of law for a conviction upon circumstantial evidence. We think the rule well established that in cases of this character the *corpus delicti* may be established by circumstantial evidence, and that direct evidence of the fact of intercourse is not required, but may be inferred from circumstances that lead to it by fair inference as a necessary conclusion. If the evidence establish that the parties were together in equivocal circumstances, an opportunity to commit the crime and an adulterous inclination or disposition in the minds of the parties, and it is further shown that the circumstances are inconsistent with any other reasonable hypothesis than that of guilt, then there is sufficient circumstantial evidence to support a conviction. In *State v. Sims*, 35 Ida. 503, 206 Pac. 1045, it is said:

"It would have been better if the court had stated that the evidence of opportunity and adulterous disposition or inclination is sufficient to justify a conviction only if the circumstances prove beyond a reasonable doubt that the crime was committed as charged, and are inconsistent with any other reasonable hypothesis than that of the defendant's guilt."

In *State v. Shelton*, 46 Ida. 423, 267 Pac. 950, this court uses the following language:

"*State v. Sims, supra,* cited with approval *State v. Trachsel,* 150 Iowa, 135, 129 N. W. 736, as follows:

" 'Mere disposition and opportunity to commit adultery are not alone sufficient to justify a conviction, but there must be circumstances inconsistent with any other reasonable hypothesis.'

"And in the same case, the court quoted with approval from a Wisconsin case as follows:

" 'It is enough to sustain a conviction of adultery that the adulterous disposition be shown to exist between the parties, and that they were together in equivocal circumstances, such as would lead the guarded discretion of a reasonable man to the conclusion of guilt beyond a reasonable doubt.' (*Monteith v. State,* 114 Wis. 165, 89 N. W. 828.)"

The rule is stated in 1 R. C. L., page 648, section 28:

"Where circumstantial evidence is relied upon to sustain a conviction, as is usually the case, it is peculiarly within the province of the jury to weigh the evidence and determine what it is worth. All that is required, according to the authorities, is that the circumstances must be such as will lead the guarded discretion of a reasonable and just man to the conclusion that the alleged act was committed."

In 2 C. J., page 22, section 44, it is said:

" . . . . the crime may be sufficiently established by proof of circumstances from which the jury may reasonably infer the guilt of defendant."

In *Gill v. State,* 32 Okl. Cr. 276, 240 Pac. 1073, it is stated:

"The evidence in this case reasonably proves the commission of adultery between the defendant and the said Florence Dalrymple. . . . . In any event, it was a question for the jury. In a prosecution for adultery, positive evidence of the direct fact is not required, and the fact of intercourse is properly inferred from circumstances that lead to it by fair inference as a necessary conclusion."

In *State v. Odekirk,* 56 Utah, 272, 190 Pac. 777, in the course of the opinion the following language is used:

"We are not prepared to say, under all the circumstances disclosed by the evidence in the record now under considera-

tion, that the jury might not reasonably infer the guilt of the defendant. It would, in our opinion, be a very difficult matter indeed for fair minded men to say that a married man . . . . who admittedly is seen in company with a young woman on numerous occasions . . . . sleeps . . . . away from his family . . . . and is found emerging from her room . . . . when both are found partly disrobed, does not give rise to a just inference that an act of unlawful sexual relation had been committed. True it is that the evidence was oftentimes in conflict, but, nevertheless, it was the province of the jury, as the triers of the facts to determine its weight, as in other criminal proceedings.''

See, also, *Monteith v. State,* 114 Wis. 165, 89 N. W. 828; *Woody v. State,* 10 Okl. Cr. 322, 136 Pac. 430; *Crane v. People,* 168 Ill. 395, 48 N. E. 54; *Thayer v. Thayer,* 101 Mass. 113, 100 Am. Dec. 110.

The record establishes that Richardson was referred to by Mrs. Bird as her husband or man, which he did not disavow (*People v. Collins,* 35 Cal. App. 175, 169 Pac. 410; 1 Cal. Juris. 472, sec. 6); that she made frequent visits to the home of Richardson (*Blackman v. State,* 36 Ala. 295; *Sutton v. State,* 124 Ga. 815, 53 S. E. 381; *State v. Austin,* 108 N. C. 780, 13 S. E. 219; *Mabry v. State,* 54 Tex. Cr. 449, 114 S. W. 378); that Richardson made frequent visits at the apartment or home of Mrs. Bird and remained overnight (*People v. Girdler,* 65 Mich. 68, 31 N. W. 624; *State v. Nelson,* 39 Wash. 221, 81 Pac. 721); that they frequently associated together (*State v. Marvin,* 35 N. H. 22; *Till v. State,* 132 Wis. 242, 111 N. W. 1109); and that the relation was intimate; that they were in the Richardson home with the lights out (*State v. Austin, supra*); that Mrs. Bird's several apartments had but one bed and that Richardson was seen coming to these places upon numerous occasions on Saturday evening and seen leaving Sunday night or Monday (*Starke v. State,* 97 Ga. 193, 23 S. E. 832; *Eldridge v. State,* 97 Ga. 192, 23 S. E. 832; *State v. Ean,* 90 Iowa, 534, 58 N. W. 898; *Commonwealth v. Clifford,* 145 Mass. 97, 13 N. E. 345; *United States v. Griego,* 11 N. M. 392, 72 Pac. 20; *State v. Snover,*

65 N. J. L. 289, 47 Atl. 583). Upon an examination of the foregoing cases it will be found that such evidence was held to be sufficient to uphold a conviction of the crime of adultery or admissible as showing adultery or adulterous disposition or inclination. All of the facts set forth in the statement as to the association and conduct of appellants prior to and upon the occasion of their arrest were established to the satisfaction of the jury, which forces us to the conclusion that the evidence clearly established that there were equivocal circumstances and an opportunity to commit the crime, and we do not think it can be logically contended that there was no competent evidence to sustain the verdict, but rather, that there was sufficient circumstantial evidence to establish the *corpus delicti* and that from all the facts and circumstances there was sufficient competent evidence to establish an adulterous disposition or inclination between the parties and that the circumstances are such as may be said to be inconsistent with any other reasonable hypothesis than that of guilt of the crime charged. We have therefore concluded that the evidence is sufficient, although circumstantial, to sustain the verdict and judgment.

Assignment of error numbered 3, predicated upon the refusal of the court to advise the jury to acquit, is not reviewable. (*State v. Cacavas,* 55 Ida. 538, 44 Pac. (2d) 1110; *State v. Emory,* 55 Ida. 649, 46 Pac. (2d) 67; *State v. McClurg,* 50 Ida. 762, 300 Pac. 898; *State v. Stevens,* 48 Ida. 335, 282 Pac. 93.)

The fourth and fifth specifications urge that the court erred in refusing to give defendants' requested instruction number 1, and in giving instruction number 5, which instructions both relate to evidence of good character. Instruction number 5, given, covered the matter requested in instruction number 1, and called to the jury's attention that evidence of good character was submitted tending to show the good character for morality of the defendants, and advised the jury that such evidence should be considered by it together with all the other facts and circumstances of the case and should be given such weight as the jury believed it entitled to in

determining whether or not defendants were guilty beyond a reasonable doubt. The objectionable features of the instruction, if any, are not pointed out and it appears to be most favorable to appellants. The requested instruction is subject to the criticism that it was couched in the singular as to make it pertinent only to appellant Richardson, and the instruction refers to "his good character for peace and quietness" while an examination of the record discloses the evidence with relation to character referred to reputation for "truth and veracity" and "morality" of the defendants. It does not appear that there was any error, prejudicial to appellants, in the court's refusal to give requested instruction number 1, nor in giving instruction number 5.

There is no merit in appellants' contention that the giving of instruction number 4, a statement of the law with respect to the proof of adultery, was erroneous. This instruction substantially in the form given was approved in *State v. Sims, supra.* Requested instruction number 2 was fully covered by the above referred to instruction, and the court's refusal to give the requested instruction, therefore, did not constitute prejudicial error.

No authorities are cited in support of the remaining assignments of error, nor are they argued in the brief, and they therefore need not be considered. (*Nash v. Meyer*, 54 Ida. 283, 31 Pac. (2d) 273; *Harris v. Chapman*, 51 Ida. 283, 5 Pac. (2d) 733.)

From what has been said it follows that the judgment of the trial court should be affirmed, and it is so ordered.

Givens, C. J., and Morgan, J., concur.

Holden and Ailshie, JJ., concur in the conclusion reached.