ERMIS, Appellant, vs. ERMIS, Respondent.

*June 10—July 12, 1949.*

340

For the appellant there was a brief by *Robert J. Krome* and *Rubin & Ruppa,* attorneys, and *Nathan Ruppa* of counsel, all of Milwaukee, and oral argument by *Mr. Nathan Ruppa* and *Mr. Krome.*

*Aaron D. Levine* of Milwaukee, for the respondent.

MARTIN, J. In divorce law, adultery is the voluntary sexual intercourse of a married man or woman with a person other than the offender's wife or husband. *State v. Brooks* (1934), 215 Wis. 134, 254 N. W. 374.

The rule is that the issue should be determined by the clear and satisfactory preponderance of the evidence. It was stated in *Poertner v. Poertner* (1886), 66 Wis. 644, 647, 29 N. W. 386:

> "We are quite unable to perceive any difference in principle between an issue of adultery in a divorce suit, and issues in many civil actions involving charges of other crimes. The consequences of a finding that the crime has been committed may be just as disastrous in the one case as in the other,—may even be more disastrous in the latter class of cases than in the former case. That must depend greatly, not only upon the heinousness of the crime, but upon the standing, situation, and circumstances of the party charged therewith.
>
> "The rule as to the strength and quality of testimony required to justify a finding of guilt, when the issue in a civil action involves a charge of crime other than adultery, having been established by repeated judgments of this court, we have concluded, after much deliberation, that the same rule should obtain when adultery is charged in an action for a divorce. That rule is that the issue should be determined by the clear and satisfactory preponderance of the evidence. The jury in such a case should be so instructed, but not that the crime must be proved beyond a reasonable doubt before they can properly find it has been committed."

In cases of this character the testimony is generally for the most part circumstantial. From the very nature of the crime it is obvious that direct evidence of the unlawful act is not usually obtainable; the natural secrecy of the act makes it ordinarily impossible to prove except by circumstantial evidence. It is the province of the jury, as triers of fact, after hearing witnesses testify and observing their demeanor while on the witness stand, to sift the testimony submitted to them, reject that unworthy of belief, and from all of the evidence ascertain the truth of the charge.

It was stated in *Monteith v. State* (1902), 114 Wis. 165, 168, 89 N. W. 828:

"Adultery is rarely proven by direct evidence. If the adulterous disposition be shown to exist between the parties, and they be shown to have been together in equivocal circumstances, such as would lead the guarded discretion of a reasonable and just man under the circumstances to the conclusion of guilt beyond a reasonable doubt, it is sufficient. 2 Greenl. Ev. secs. 40, 41; *Baker v. U. S.* 1 Pin. 641." See also *Gundlach v. State* (1924), 184 Wis. 65, 198 N. W. 742.

In *Czerniakowski v. National Ice & Coal Co.* (1948), 252 Wis. 112, 115, 31 N. W. (2d) 156, it is stated that the rule of law is well established that where credible evidence exists to support the verdict of a jury or where a problem of fact determination is one of inferences from circumstances, it is peculiarly the function of the jury to make such fact determinations, and their verdict should not be disturbed unless there is no credible evidence to support it.

In the present case the jury's verdict has had the approval of the trial court. However, appellant contends that the findings of the jury are not sustained by the evidence but are based in their entirety on guess, conjecture, and speculation. We will therefore review the facts.

Mr. Leichtle is a married man and was living with his wife at the time of the offenses charged. The plaintiff and Leichtle repeatedly denied: (1) That they had been out together except for the one occasion, January 31, 1948, when they were confronted by Edwin J. Steffen and Walker Russell, private detectives, and the respondent as they were leaving a tavern; (2) that they had frequent telephone calls; and (3) that they committed adultery on any occasion.

· First of all, we will consider the evidence relating to the adulterous intent, or disposition on the part of the parties accused.

By admissions of plaintiff and Leichtle, or testimony of respondent and Mrs. Leichtle, it is established that a close

personal friendship of plaintiff and Leichtle for each other existed. Plaintiff kissed Mr. Leichtle on several occasions either in the Leichtle home or in the Ermis home, in the presence of respondent and Mrs. Leichtle. Plaintiff was a guest in the Leichtle home while the divorce was pending, and they consulted with each other during the pendency of the divorce. Plaintiff told respondent that she had found somebody she loved more than she ever thought of loving him, but she did not tell him who it was. The defendant hired detectives to watch plaintiff, and their testimony establishes the association of the plaintiff and Leichtle, and the facts that they frequented taverns, that they were out at all hours of the night, and that they were seen kissing, petting, and embracing in Leichtle's automobile and in a tavern. The testimony of the defendant and his notes of the telephone conversations between the plaintiff and Leichtle clearly establish the intimacy between the parties.

Next we will consider the evidence relating to the time and opportunity to engage in adultery afforded to the parties.

The testimony of the three detectives establishes that the plaintiff and Leichtle were together in taverns and in an automobile on three occasions, that there was no one else around during the large portion of time that they were together in the late evening and early morning hours, and that they were seen embracing, petting, and kissing both in the automobile and in a tavern. The testimony of detectives was corroborated in part by the testimony of Paul Polek, a tavern keeper, who stated that the parties had been in his tavern together, and that Leichtle had requested him to deny such fact.

We do not consider it necessary to relate the entire report and testimony of the detectives on the three occasions on which the jury made its findings. The facts are that each time the parties visited various taverns, indulged in drinking, and embracing, kissing, and petting in Leichtle's automobile and in a tavern.

Following, on September 6, 1947, plaintiff drove with Mr. Leichtle through Shorewood to the Fairy Chasm road, arriving there at 3 : 05 a.m. At that time it was quite foggy out there and their car was lost sight of. At 5 :15 a.m. plaintiff was observed walking from the west to her home and entering her home.

On September 28, 1947, the parties drove to a tavern out in the country and parked the car in an unlighted parking area to the rear. At about 4 a.m. it was observed that this car was the only car in the parking place. At that time two people were in the automobile. At about 4 : 35 a.m. the automobile left the parking place and was driven to and parked in the same place where plaintiff had met Leichtle earlier in the evening. It was observed that the people in the automobile were plaintiff and Leichtle. They parked and there was some "necking" going on in the car. Plaintiff walked home about 5 : 15 a.m.

On October 2, 1947, the parties came out of a tavern at two o'clock in the morning and drove to a wooded area south of McGovern park. The last that was seen of them was when the car was heading into an unpaved road into the wooded area of the park. A short time thereafter the Ermis home was watched, but until 6 : 15 a.m. she had not been seen entering the home.

Defendant intercepted telephone conversations in his home by clamping an earphone to the telephone wires in the basement. The telephone conversations between plaintiff and Leichtle which he recorded were admitted as evidence. These confirm the existence of an adulterous inclination between plaintiff and Leichtle and are very revealing as to the attitude of these parties.

The combination of the time of the association, the dark, secret, and unpopulated places where they were and the length of time plaintiff and Leichtle were in such places, constitutes equivocal circumstances.

The jury saw the witnesses and heard the testimony in this action. We have previously set out the denials made by plaintiff and Leichtle. This testimony was contradicted by the testimony of the detectives and tavern keeper, disinterested and impartial witnesses. No innocent theory or legitimate reason is given to explain the conduct of parties.

It was, of course, within the province of the jury to weigh the testimony, and we are not justified in setting aside their verdict which was sustained by the trial court.

The testimony would lead the guarded discretion of a reasonable and just man to conclude that there was no legitimate explanation of the acts of the parties, and it would satisfy him by clear and satisfactory evidence that the offenses charged had been committed.

The circumstances shown here, in our judgment, were sufficient to comply with the rule which we earlier quoted from *Monteith v. State, supra,* and justify the verdict which the jury rendered and which was approved by the trial court.

The total value of the property owned by the parties is approximately $21,400.

From the time of their marriage in 1937, until the divorce action was begun in May, 1947, the plaintiff washed and ironed all the linens of the rooming house and kept the halls and stairways clean. This rooming house consisted of three floors with sixteen tenants. At the time of their marriage, it was subject to a $12,000 mortgage. The parties' income consisted of the moneys received from the profits of operating the rooming house and defendant's earnings from the A. O. Smith Corporation. It is obvious that plaintiff contributed in the building of the estate. Then, too, there is the marriage relation and the bearing and upbringing of the children.

With respect to defendant's motion for a review, the division of property between the parties is held to be within the discretion of the trial court and, upon the showing made here, will not be disturbed.

*By the Court.*—Judgment affirmed.