CHAPMAN, Respondent, vs. CHAPMAN, Appellant.

*March 4—April 8, 1958.*

For the appellant there was a brief and oral argument by *Robert Zum Brunnen* of Spooner.

For the respondent there was a brief by *S. P. Rigler* of Rice Lake, and *Douglas, Omernik & Bitney* of Spooner, and oral argument by *Mr. Rigler* and *Mr. E. E. Omernik*.

MARTIN, C. J. It is defendant's first contention that the evidence does not support the trial court's finding that the plaintiff is entitled to a divorce on the ground of cruel and inhuman treatment.

Plaintiff had been previously married to one Schricker, a resident of the state of Washington. By the prior marriage, which ended in divorce, plaintiff had one child, thirteen years of age at the time of this trial and in the temporary custody of the former husband. She married the defendant on August 20, 1956, at which time she had a daughter born out of wedlock, aged fifteen months. Defendant, at the time of the marriage, formally admitted he was the father of the infant. After the marriage, which took place in South Dakota, the parties lived for a time in Shell Lake, Wisconsin, and later moved to Rice Lake. Action for divorce was com-

menced by the plaintiff on November 23, 1956, about three months after the parties were married.

In the complaint plaintiff alleges cruel and inhuman treatment of her by defendant consisting, among other things, of the following : That he used profane and vile language toward her, accused her of adultery with her former husband, and used physical force and violence upon her person.

Defendant alleged in his counterclaim that plaintiff committed adultery with her former husband between November 15 and 21, 1956; that on October 23, 1956, without his knowledge or consent, plaintiff had an abortion at Minneapolis; that, without his knowledge or consent, she went to the home of her former husband in Washington and remained there two days.

The trial court found the evidence insufficient to sustain the allegations of the counterclaim. The record shows that on about November 15, 1956, plaintiff went to the state of Washington for the purpose of obtaining clothing and household goods belonging to her from the home of her former husband, and to visit her thirteen-year-old daughter. On Thanksgiving morning, November 23, 1956, as had been previously arranged between the parties, she returned to Minneapolis where the defendant met her and they drove to Minong, to the home of plaintiff's mother, for dinner.

During her stay of two days in Washington, plaintiff lived at her former husband's home. This is the time of the alleged adultery. There is no evidence with respect to what occurred during that time except that of the plaintiff, who testified that while she stayed there with her daughter her former husband lived at the home of his brother.

There is no evidence upon which the court could find adultery. Opportunity may have existed, as the trial court observed, though any clear decision as to that was clouded by the fact of the daughter's presence. Adultery is an issue which should be determined by the clear and satisfactory pre-

ponderance of the evidence. *Ermis v. Ermis* (1949), 255 Wis. 339, 342, 38 N. W. (2d) 485. As there stated:

"In cases of this character the testimony is generally for the most part circumstantial. From the very nature of the crime it is obvious that direct evidence of the unlawful act is not usually obtainable; the natural secrecy of the act makes it ordinarily impossible to prove except by circumstantial evidence. It is the province of the . . . triers of fact, after hearing witnesses testify and observing their demeanor while on the witness stand, to sift the testimony submitted to them, reject that unworthy of belief, and from all of the evidence ascertain the truth of the charge."

On this point of the case, as on most others involved here, the testimony of the parties was in conflict. This court has consistently held that the question of credibility of witnesses is for the trier of the facts. See cases in 1 Callaghan's Wis. Dig., Appeal and Error, p. 552, sec. 827.

The same rule applies as to the trial court's view of the evidence with respect to the alleged abortion. Here, too, the testimony was in sharp conflict, plaintiff testifying that she submitted to the same at the insistence of the defendant and in circumstances arranged by him, defendant testifying that he knew nothing of the event until after it occurred and the plaintiff told him about it. It would serve no purpose here to detail the testimony in this regard. Clearly, only one of the parties was telling the truth and it was for the trial court to decide who was doing so.

In discussing various aspects of the evidence, the trial court made the following comments in its memorandum opinion:

". . . the court was impressed throughout the trial by the very evident subjugation of the plaintiff by the defendant, the latter appearing to be a very clever, strong-willed individual who was able to exercise and did exercise considerable control and influence over the plaintiff."

"The plaintiff's testimony as to the preceding event stands naked and alone without corroboration of any kind, still it

impressed the court as being more reasonable and likely than the rather glib testimony of the defendant."

"The court can place no credence in defendant's story . . . standing alone it appeared fantastic."

"The court must rely on the evidence presented and where the latter is questionable to use the reasonableness of the story, the attitude and the demeanor of the witness under oath to assist in arriving at a decision. From all these factors the court feels that defendant's story is not a correct and true version."

The evidence of the plaintiff as to the defendant's cruel and inhuman treatment of her, which the trial court accepted, supports the finding that she is entitled to a divorce. Reference may be made to one incident. On plaintiff's return from Washington on Thanksgiving morning she was met by defendant and his children in Minneapolis, and the family, as prearranged, drove directly to Minong for dinner at the home of plaintiff's mother. All through the dinner and afternoon the parties quarreled because she had gone to Washington. The mother testified that the defendant used vile and profane language toward his wife; that he followed plaintiff into a bedroom and there was a "terrible noise" during which plaintiff called for her; that she saw the defendant hit plaintiff over the head with a framed picture, scattering glass all around; that the rug and bedspread and dresser scarf were torn; that defendant went out of the house with the baby and plaintiff followed him; that when plaintiff returned to the house her hair was disheveled, her clothes torn, she was full of snow, and bruised about the face and neck. After the altercation defendant took the baby and left plaintiff in Minong. This testimony corroborated that of the plaintiff. It was also plaintiff's testimony that defendant had used vile language as well as physical force and violence upon her on previous occasions when there were no witnesses present. She testified that he accused her of unfaithfulness and unfitness as a wife and mother.

As stated in *Gordon v. Gordon* (1955), 270 Wis. 332, 339, 340, 71 N. W. (2d) 386:

"There is no yardstick definition for cruel and inhuman treatment. Each case depends for construction on its own peculiar circumstances. . . . However, treatment which does or is well calculated to impair the health of a party, makes the marriage state intolerable and renders a party incapable of performing his or her duties in married life, satisfies the 'cruel and inhuman treatment' referred to in the statute."

Defendant further contends that the award of alimony is excessive. The evidence shows that defendant is not employed but realizes all his income from investments in property of a value between $80,000 and $100,000; he has an average net income of $400 per month. Although plaintiff receives $75 per month for support and maintenance of the infant daughter, alimony of $175 a month is not excessive in view of the fact that it is necessary for her to provide a proper home for herself and the child and, since it is of such a tender age, be free to give the child the constant care and attention it needs.

While it is not presented as a "question involved" on this appeal, there was oral argument by counsel for the defendant that custody of the child should be given to him on the ground that he is "less unfit" than the plaintiff. As the trial court pointed out, the evidence is clear that plaintiff has always been a good and affectionate mother to the child and provided it with proper care. Under these circumstances, the child being only about two years old and a consideration for its welfare being the controlling factor, preference to the mother as to the custody of her small daughter was proper. See *Acheson v. Acheson* (1940), 235 Wis. 610, 294 N. W. 6; *Hansen v. Hansen* (1947), 251 Wis. 574, 30 N. W. (2d) 227.

*By the Court.*—Judgment affirmed.