Monteith, Plaintiff in error, vs. The State, Defendant in error.

*March 14—April 1, 1902.*

*Adultery: Evidence: Proof of handwriting.*

1. The question being whether certain letters were written by defendant, one witness, who had seen defendant write a little, testified that he thought the letters were in defendant's handwriting, and another witness, a bank cashier, accustomed to examine handwriting, testified, after comparing the letters with an admittedly genuine signature of defendant, that in his opinion the same person wrote them all.  *Held,* sufficient to warrant the admission of the letters in evidence, their genuineness being still a question for the jury.

2. Letters to a married woman written by defendant while in jail awaiting trial for adultery with her, referring to the good times they had had together, and couched in terms of affection such as could not properly be written to a married woman by one not her husband, were sufficient to indicate an improper intimacy between the writer and the recipient, and were admissible on the trial.

3. To sustain a conviction for adultery it is sufficient that the adulterous disposition be shown to exist between the parties, and that they were together in equivocal circumstances, such as would lead the guarded discretion of a reasonable and just man to the conclusion of guilt beyond a reasonable doubt.

Error to review a judgment of the superior court of Douglas county: Charles Smith, Judge.  *Affirmed.*

The plaintiff in error was convicted of the crime of adultery, and brings his writ of error to reverse the judgment. The crime was alleged to have been committed with one Sophia Olson, a married woman, on the 27th day of Febru-

ary, 1901, at the city of Superior. One Christ Olson, the husband of Sophia Olson, was the principal witness on the part of the state. His testimony tends to show that his wife was addicted to drinking; that he and his wife had had considerable domestic difficulty arising from her drinking, and from her associating with the defendant; that they at one time lived in the Chase Block in Superior, and rented one of their rooms to *Monteith;* that witness and his wife were living apart when the crime is said to have been committed, but that they had met and had some difficulty on that day; that the defendant was still occupying a room in the second story of the Chase Block at that time, and that on the evening in question the witness saw his wife go into the front entrance of the Chase Block; that he immediately went to the rear entrance, and reached the hall of the second story in ·time to see his wife enter defendant's room; that he stayed in the hall and watched for several hours, and saw defendant go down and get a can of beer, and take it into the room; that witness went away and returned early in the morning, and saw his wife and defendant come out of the room together, and that he followed them into the street, where he had a fight with the defendant. The testimony was undisputed that Sophia Olson occupied a room in the Chase Block that night, and that defendant engaged the room for her, and showed her to it. There is some testimony tending to show that it was a room adjoining defendant's room. A roommate of the defendant testifies that the defendant was in his own room in the evening, and stayed there all night; but his testimony was much shaken on cross-examination, and he admitted that he did not know when defendant went out of the room in the morning. There was also testimony by one witness to the effect that it was impossible to see the door of defendant's room from the point where Olson claims he stood and watched in the hall, on account of a jog in the wall of the hall; but it is clear that, even if the door itself was not ac-

tually in sight, people who came upstairs and went in the direction of the defendant's room could be seen until they reached a point within a very short distance of the door. Certain letters which the witness Olson testified that he procured from his wife were introduced in evidence, against objection and exception. Neither the defendant nor Mrs. Olson were sworn as witnesses.

A motion was made after verdict to set the same aside, and grant a new trial, because the verdict was against the evidence, but the motion was overruled and exception taken. No exceptions were taken to the charge, and the instructions requested by the defendant were all given.

For the plaintiff in error the cause was submitted on the brief of *A. C. Titus.*

For the defendant in error there was a brief by the *Attorney General,* and oral argument by *C. E. Buell,* first assistant attorney general.

WINSLOW, J. Two contentions are made by the defendant, viz.: (1) that the letters received in evidence were immaterial and not sufficiently identified as in the handwriting of the defendant, and (2) that the verdict is not sustained by the evidence.

1. The letters were quite long, and it is not deemed necessary to quote them here. They purport to have been written, one in April and one in May, after the alleged crime was committed, and when the defendant was in jail awaiting trial. They are addressed "Dear Friend," are signed with the initials R. M., and purport to be written from a place of confinement by one awaiting trial. They are couched in terms of great affection, and are such as could not properly be written to a married woman by any man not her husband. They refer to the good times they have had together, to the fact that the writer will probably have to go over the road for a term, and urge the recipient not to go back on him, but stand

by him, and get a divorce, and they will live together happily after his term is out. They contained much besides what is here stated; but it is not deemed necessary to state more in order to show that they were entirely sufficient to indicate an improper intimacy between the writer and the recipient. The proof that they were written by defendant consisted of evidence by Olson that he had seen defendant write a little, and that he thought the letters were in defendant's handwriting; also of evidence of one Kommers, a bank cashier accustomed to examine handwriting to ascertain its genuineness, who, after examining an admittedly genuine signature of the defendant, and comparing it with the letters and the initials appended thereto, testified that in his opinion the same person wrote them all. It would certainly have been desirable to have had more abundant proof that the letters were in defendant's handwriting, but we think the proof submitted was sufficient to warrant a ruling admitting them in evidence. After they were admitted, it was still a question for the jury whether they were genuine, and doubtless the court would have so instructed the jury had he been requested to do so; but no request of that kind was made. Hence we conclude there was no error committed in receiving the letters in evidence.

2. The contention that the evidence is insufficient to sustain the verdict cannot be sustained. Adultery is rarely proven by direct evidence. If the adulterous disposition be shown to exist between the parties, and they be shown to have been together in equivocal circumstances, such as would lead the guarded discretion of a reasonable and just man under the circumstances to the conclusion of guilt beyond a reasonable doubt, it is sufficient. 2 Greenl. Ev. §§ 40, 41; *Baker v. U. S.* 1 Pin. 641. The circumstances shown here, in our judgment, were sufficient to comply with this rule and justify the verdict which the jury rendered.

*By the Court.*—Judgment affirmed.