TILL, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 6—May 21, 1907.*

*Adultery: Evidence: Sufficiency: Admissions: Order of proof: Opinions: Description of conduct by nonexperts: Instructions to jury.*

1. Proof of inclination and opportunity is sufficient in itself to warrant a conviction of adultery only when it shows conduct reasonably suggesting specific libidinous tendency of each of the parties toward the other and that they had been together in equivocal circumstances, such as would lead the guarded discretion of a reasonable and just man under the circumstances to the conclusion of guilt beyond a reasonable doubt.

2. The evidence in this case is *held* sufficient to warrant the magistrate in committing the defendant for trial on a charge of adultery and to warrant the trial court in refusing to direct the jury to acquit.

3. On a trial for adultery, admissions by defendant of certain specific facts not themselves constituting the crime charged or any part of it, but furnishing links in the chain of circumstantial evi-

dence leading to the conclusion of his guilt, were admissible although the *corpus delicti* had not yet been established.

4. The admission of the testimony of nonexpert witnesses describing generally the conduct of defendant after his stepdaughter, with whom he was charged with having committed adultery, was taken sick, is *held* not to have been error.

5. Requested instructions calling attention to specific items of evidence and charging as to each such item that in and of itself it was no evidence of the offense or did not necessarily tend to corroborate certain other testimony, are *held* to have been properly refused.

6. Although it is of doubtful propriety, especially in a criminal case, for the court to state in the charge that the evidence tends to prove certain facts, yet in this case, the statement being absolutely true, there was no prejudicial error.

7. On a trial for adultery an instruction directing the jury to consider whether there was anything unusual or suspicious in the episode of a visit by defendant's alleged paramour to the barn in which he was working at the time when the offense is charged to have been committed, is *held*, in view of other instructions given, not to have conveyed to the jury the idea that they might convict if they found anything unusual or suspicious in that visit, nor to have conveyed any intimation that the court considered that such visit was proved.

ERROR to review a judgment of the circuit court for Eau Claire county: JAMES O'NEILL, Circuit Judge. *Affirmed.*

Charge of adultery committed on December 15, 1905, by defendant upon his stepdaughter. The evidence generally consisted of testimony that on the day named defendant announced at supper that some one of the family needed to come to a neighboring barn, where he was employed, to bring the milk, as he was obliged, after doing the chores, to take his employer to drive; that after dusk the stepdaughter, Pauline, about twenty years of age, went to the barn, remained about half an hour and returned without the milk, stating that defendant had not completed milking, but would bring it himself, as he found he need not go to drive. This was supplemented by testimony of admissions made thereafter by defendant to other daughters of his wife and the husband of one of them, also to a neighbor, that he had had sexual rela-

tions with Pauline. Some time in January Pauline had been seized with a nervous or hysterical attack, not by any evidence connected with the fact charged, and had become deranged and had been sent to an insane asylum, so that she did not testify. Defendant denied all improper relations with her, and denied her presence at the barn on the evening in question, and denied all the alleged admissions, and offered proof of good reputation in the community.

On the trial defendant insisted, by motion for dismissal and by plea in abatement and demurrer to the information, that there had been no preliminary examination on which he had been properly held to trial, because the evidence offered on that examination was not sufficient to warrant a finding either that any crime had been committed or that there was reasonable probability that defendant committed it, upon all of which he was overruled. He also, at the close of the state's evidence, moved for discharge and acquittal, and again, at the close of all the evidence, moved for a direction to acquit, both of which were overruled and exceptions reserved, whereupon the jury returned a verdict of guilty, and the court, after overruling motions in arrest of sentence and for a new trial, sentenced the defendant, to review which he sued out writ of error from this court.

The cause was submitted for the plaintiff in error on the brief of *W. H. Frawley,* and for the defendant in error on that of the *Attorney General* and *J. E. Messerschmidt,* law examiner.

DODGE, J. 1. The first and second contentions of plaintiff in error, that the evidence before the magistrate was insufficient to confer jurisdiction to commit defendant for trial, and that the evidence upon the trial was not sufficient to convict, may both be considered together, for the evidence upon the two occasions did not differ materially in character, although perhaps somewhat more complete and exhaustive upon

the trial. The crime of adultery, perhaps more frequently than any other, must ordinarily be proved by circumstantial evidence, and the rule is thoroughly established that proof of adulterous inclination between the parties existing prior to the alleged offense, combined with proof that the parties have been together "in equivocal circumstances, such as would lead the guarded discretion of a reasonable and just man under the circumstances to the conclusion of guilt beyond a reasonable doubt," are sufficient to justify an inference that adultery did take place between them at the time of such opportunity. *Monteith v. State,* 114 Wis. 165, 168, 89 N. W. 828. This rule is commonly abbreviated into the statement that proof of inclination and opportunity suffices; but that rule is correct only when it is understood that inclination means more than ordinary human tendencies, and must extend to proof of conduct reasonably suggesting specific libidinous tendency of each of the parties toward the other, and opportunity must be understood as meaning more than mere chance, and must include the elements involved in the description above quoted. *Baker v. U. S.* 1 Pin. 641; *Hofer v. State,* 130 Wis. 576, 110 N. W. 391; *Thompson v. State* (Iowa) 111 N. W. 319. It cannot well be doubted that if the jury believed the testimony of the numerous witnesses to admissions by defendant that, for a long time, illicit sexual relations had existed between him and this stepdaughter, and the expert medical testimony to the effect that she showed full physical marks of unchastity, there was sufficient evidence to believe in an adulterous inclination within the meaning of the rule above stated. It is more doubtful, perhaps, whether the circumstances of the alleged opportunity are such as to satisfy that rule. Of course, the mere presence of a member of the family at the place of defendant's work for so natural a purpose as to bring back the usual supply of milk carries no necessary inference of an immoral purpose; yet it did furnish full and adequate opportunity, and there is some evidence of difficulty of mu-

tual access within the residence, and there is the inferable circumstance that there was in fact no real occasion for her to go for milk, since defendant was able to bring it himself, and the further fact of at least suggested undue and unnecessary protraction of the girl's stay. When to this is added the fact that defendant denied that she came to the barn at all, which, if disbelieved by the jury, might be deemed indicative of guilty consciousness, we cannot feel justified in concluding that no reasonable person could have drawn the inference that in the course of the habitual adulterous relations between the parties one of the guilty acts occurred on this occasion. Hence we can neither say that the committing magistrate had not before him sufficient evidence to arouse his jurisdiction to decide that an offense had been committed, nor that the trial court erred in refusing, upon the several motions, to hold that there was no evidence to go to the jury.

2. Plaintiff in error, upon the basis of certain overruled objections to evidence, invokes the rule that evidence of confessions should not have been admitted until the *corpus delicti* was established. It is obvious that in proving the crime of adultery ordinarily the same facts serve to prove the *corpus delicti* and the defendant's responsibility for it. *State v. Potter,* 52 Vt. 33. But a more obvious difficulty with the present assignment of error is that no confessions were offered in evidence. It is not claimed that defendant at any time admitted his guilt of the crime charged and submitted to the jury, namely, the adultery on the occasion of the girl's alleged visit to the barn on the 15th of December. The evidence offered was not of confessions, but of his admissions of certain specific facts not themselves constituting the crime charged, nor any part of it, but furnishing links in the chain of circumstantial evidence leading to the conclusion asserted by the prosecution. There is no rule that such specific facts cannot be proved by the admissions of the defendant nor in any order the prosecution may choose. Such facts were just

as material to the *corpus delicti,* namely, to the conclusion that a criminal act had been committed, as to the further conclusion that the defendant was the guilty person.

Another class of assignments of error are predicated upon testimony to so-called conclusions in describing the subsequent conduct of defendant after Pauline was taken sick. In the course of stating what he said and did witnesses declared that he was greatly worried and acted stupid, as though there was something wrong with him. We cannot think reception of these attempts to describe his conduct error. Much the same reasons justify generalized description of such conduct, although in the nature of conclusions, as have led to permitting nonexpert witnesses to give their conclusions as to the sanity of one with whom they have contact, based upon what they observe at the described interview. The subject was discussed somewhat at large in *Duthey v. State,* 131 Wis. 178, 111 N. W. 222, and reference made to the exhaustive exposition of reasons therefor in the dissenting opinion of Doe, J., in *State v. Pike,* 49 N. H. 399, 6 Am. Rep. 153, and in *Conn. Mut. L. Ins. Co. v. Lathrop,* 111 U. S. 612, 4 Sup. Ct. 533.

3. Error is assigned upon the refusal of some seventeen different requests to charge. None of these is argued specifically, and we might well forego consideration of them for that reason; but we may say that a large share of them consists in requests that the court call special attention to some specific item of evidence, and charge that such item in and of itself was no evidence of the offense or did not necessarily tend to corroborate certain other testimony. This is a field in which we have seldom felt justified in convicting the trial court of error in declining to select such individual facts for comment or instruction as to their effect. Blashfield, Instr. to Jur. § 42; *Loose v. State,* 120 Wis. 115, 133, 97 N. W. 526. No fact, generally speaking, stands alone in the trial of an action, and the trial court cannot safely select any one and

declare the weight or effect it should have with the jury. *Coman v. Wunderlich,* 122 Wis. 138, 143, 99 N. W. 612; *Schutz v. State,* 125 Wis. 452, 460, 104 N. W. 90; *Horr v. C. W. Howard Co.* 126 Wis. 160, 165, 105 N. W. 668. A fact may be meaningless in and of itself, but cogent in association with others. The trial court did caution the jury as to the weight to be given to certain of the items of the evidence involved in these instructions, and, we think, went quite as far in that direction as wise discretion warranted. Many others of the requested instructions, more in the nature of general rules of law, we find adequately embodied in the charge as given.

4. Certain portions of the charge are assigned as error. Two of these consisted of the statements that the evidence tended to show certain facts, and were made as preliminary to explanation of the jury's duty in reaching conclusion upon such facts. It is of doubtful propriety, especially in criminal cases, for the court to declare that evidence tends to prove a fact, for that trenches closely upon the province of the jury. It nearly always answers all purposes to state that one party or the other claims that the evidence so tends. In the present case, however, we think the statements were absolutely correct in fact, and must conclude that the course of justice could not have been perverted thereby. Other two assignments consist in directions to the jury to consider whether there was anything unusual or suspicious in the episode of Pauline's visit to the barn. It is complained that thus was conveyed to the jury the idea that they might find guilt if they discovered anything of the unusual or suspicious. We do not think such idea was conveyed. They were told that the inference of guilt was warranted only if that meeting were characterized by the elements described in *Monteith v. State,* 114 Wis. 165, 89 N. W. 828, and the real meaning of the criticised phrases of the charge obviously was that they could not so find unless the episode were unusual or suspicious, and we are persuaded

that the context made this apparent to the jury. Neither do we think was conveyed any intimation that the court assumed or considered that the visit of Pauline to the barn was established, for the jury were carefully instructed as to their proper function in ascertaining each and all of the facts claimed to be proved in the way of passing upon the credibility of conflicting witnesses.

Upon the whole, we do not find any prejudicial error among those assigned.

*By the Court.*—Judgment and sentence affirmed.