MOLLOY, Respondent, v. MOLLOY, Appellant.*

*No. 195. Argued March 31, 1970.—Decided April 28, 1970.*
(Also reported in 176 N. W. 2d 292.)

* Motion for rehearing denied, with costs, on June 26, 1970.

684

For the appellant there were briefs by *Brady, Tyrrell, Cotter & Cutler*, attorneys, and *John A. Keck* of counsel, all of Milwaukee, and oral argument by *Mr. Keck*.

For the respondent there was a brief by *Hanley, Wedemeyer & Cavanaugh*, attorneys, and *Robert F. Cavanaugh* of counsel, all of Milwaukee, and oral argument by *Robert F. Cavanaugh*.

HALLOWS, C. J. The granting of the absolute divorce on the ground of cruel and inhuman treatment is not in issue on this appeal, but it is contended by the defendant that the court erred in not finding the plaintiff had committed adultery. The effect of so finding would under sec. 247.26, Stats., [1] be the denial of alimony to the plaintiff. We think the trial court was in error in its evaluation of the proof on the issue of adultery.

The judicial approach laid down in *Loveden v. Loveden* (1810), 2 Hagg. Con. 1, 4 Eng. Ecc. 461, by Sir William Scott (Lord Stowell) has become a touchstone in divorce cases involving adultery. In *Freeman v. Freeman* (1872), 31 Wis. 235, this court quoted Lord Stowell, to wit:

"It is a fundamental rule, that it is not necessary to prove the direct fact of adultery, because, if it were otherwise,

[1] "247.26 **Alimony, property division.** Upon every judgment of divorce or legal separation for any cause excepting that of adultery committed by the wife, the court may, subject to s. 247.20, further adjudge to the wife such alimony out of property or income of the husband, for her support and maintenance, and such allowance for the support, maintenance and education of the minor children committed to her care and custody as it deems just and reasonable. . . ."

there is not one case in a hundred in which that proof would be attainable; it is very rarely indeed that parties are surprised in the direct fact of adultery. In every case, almost, the fact is inferred from circumstances that lead to it by fair inference *as a necessary conclusion;* and unless this were the case, and unless this were so held, no protection whatever could be given to marital rights. What are the circumstances which lead to such a conclusion cannot be laid down universally, though many of them, of a more obvious nature and of more frequent occurrence, are to be found in the ancient books; at the same time it is impossible to indicate them universally; because they may be infinitely diversified by the situation and character of the parties, by the state of general manners, and by many other incidental circumstances, apparently slight and delicate in themselves, but which may have most important bearings in decisions upon the particular case. The only general rule that can be laid down upon the subject is, *that the circumstances must be such as would lead the guarded discretion of a reasonable and just man to the conclusion;* for it is not to lead a harsh and intemperate judgment, moving upon appearances that are *equally capable of two interpretations,* neither is it to be a matter of artificial reasoning, judging upon such things differently from what would strike the *careful and cautious consideration of a discreet man."*

This court and others, as a guide to the exercise of guarded discretion, has classified circumstances relating to adultery mainly in terms of what has been labeled "adulterous disposition and opportunity." *Monteith v. State* (1902), 114 Wis. 165, 168, 89 N. W. 828; *Ermis v. Ermis* (1949), 255 Wis. 339, 38 N. W. 2d 485; *Hartman v. Hartman* (1948), 253 Wis. 389, 34 N. W. 2d 137; *see also* 2 Greenleaf, *Evidence,* secs. 40, 41, and *Baker v. United States* (1846), 1 Pin. 641.

Sometimes this guide has been abbreviated into the statement that proof of inclination and opportunity suffices; but that statement must be understood to mean that inclination is more than ordinary human tendencies and requires proof of conduct reasonably suggesting a specific libidinous tendency of each of the parties toward the

other; and that opportunity means more than mere chance and requires the parties to be together under such circumstances as would lead a reasonable and just person to conclude the fact. *See Till v. State* (1907), 132 Wis. 242, 111 N. W. 1109.

Proof of adultery frequently must rest on circumstantial evidence but even in the exercise of a guarded and cautious discretion such evidence may be compelling. *See State v. Johnson* (1960), 11 Wis. 2d 130, 104 N. W. 2d 379. The burden of proof in respect to adultery in divorce cases is the middle ground and is stated in terms of clear, satisfactory and convincing evidence. *Poertner v. Poertner* (1886), 66 Wis. 644, 29 N. W. 386; *Kuehn v. Kuehn* (1960), 11 Wis. 2d 15, 104 N. W. 2d 138; *Madison v. Geier* (1965), 27 Wis. 2d 687, 135 N. W. 2d 761.

It is not necessary to detail the evidence concerning the activities of the plaintiff and a Mr. Daniels. The trial court rejected as incredible the testimony of a private investigator concerning their conduct on the night of April 2d and the early morning of April 3, 1968. But what the trial court did not consider in concluding that adultery was not proved was the inference to be drawn from the fact Mrs. Molloy refused to testify on cross-examination concerning her conduct and claimed her right under the fifth amendment not to incriminate herself. Even if the testimony of the private investigator relating to the night of April 2d is discounted, the rest of his testimony and that of Mr. Molloy, plus the inference from invoking the fifth amendment is sufficient to meet the burden of proof of adultery. However, we do not find adultery was committed. That issue is to be retried by the trial court on remand.

It is argued the inference from the invoking of the fifth amendment may be drawn only in those cases where the party claiming the protection is seeking affirmative relief. We do not believe this to be a correct statement of the law. Although in many civil cases the action is

dismissed or the testimony is stricken when a party to the civil action asserts the privilege against self-incrimination, see Annot. (1965), 4 A. L. R. 3d 545, such remedy is not the exclusive effect of claiming the privilege. Here, the defendant had a right to call the plaintiff adversely. True, the plaintiff had invoked the fifth amendment on a pretrial adverse examination, but that should not preclude the defendant from calling the plaintiff adversely at the trial even though the plaintiff might again plead the fifth amendment. A divorce case is not a criminal trial and we do not think the plaintiff can immunize herself from the effects of claiming the fifth amendment by allowing her complaint to be dismissed for lack of prosecution. Whether the divorce was granted on the counterclaim or on her complaint, it was quite certain that a divorce would be granted.

Plaintiff relies on *Malloy v. Hogan* (1964), 378 U. S. 1, 84 Sup. Ct. 1489, 12 L. Ed. 2d 653, and *Spevack v. Klein* (1967), 385 U. S. 511, 87 Sup. Ct. 625, 17 L. Ed. 2d 574, for the argument that it is unjust to draw a prejudicial inference against one who invokes the fifth amendment in a civil action. These cases are not in point and we do not believe it is unjust to draw a prejudicial inference against one asserting the fifth amendment in a civil action, whether as a shield or as a sword.

This court in *Grognet v. Fox Valley Trucking Service* (1969), 45 Wis. 2d 235, 172 N. W. 2d 812, stated it had long been recognized in Wisconsin that a person may invoke the fifth amendment in a civil case in order to protect himself from the use of such evidence against him in a subsequent criminal action; but if he did so, an inference against his interest might be drawn. Since the inference is irresistible and logical in such circumstances, the court may as a matter of law draw the inference. Such an inference is based upon an implied admission that a truthful answer would tend to prove that the witness had committed the criminal act or might

constitute a criminal act. The inference is not based upon the condition that the witness is seeking relief or ought not to receive relief because he has invoked the privilege.

We consider such an inference in a civil case not to constitute any penalty or "an instrument of compulsion" as effective as the use of legal process. The administration of justice and the search for truth demands that an inference may be drawn that a witness' testimony would be unfavorable to him in a civil action in which the privilege is invoked to protect himself from a subsequent criminal action. *See* 98 C. J. S., *Witnesses,* pp. 307, 308, sec. 455.

Since it was error to dismiss the cause of action based on adultery, we must reverse those parts of the judgment which are thereby affected, *i.e.,* alimony, custody of the children, and the property settlement. In doing so, we do not hold that adultery as a matter of law renders a mother unfit for the custody of her children; it is an element to be taken into consideration with other factors in determining her fitness. *Larson v. Larson* (1966), 30 Wis. 2d 291, 140 N. W. 2d 230. Likewise, a party to a divorce action should not be penalized in a property settlement because of adultery but such conduct may be taken into consideration. *Lacey v. Lacey* (1970), 45 Wis. 2d 378, 173 N. W. 2d 142; *Barrock v. Barrock* (1950), 257 Wis. 565, 44 N. W. 2d 527; *Yasulis v. Yasulis* (1959), 6 Wis. 2d 249, 94 N. W. 2d 649. Whether or not adultery is found upon a rehearing of that issue, we think the trial court was in error in granting 40 percent of the property to the plaintiff under the facts of this case. We must also reverse the order granting $1,000 attorney's fees. Only $150 was allowed toward attorney's fees for the trial because the property settlement was sufficiently generous. When the defendant appealed, $1,000 was allowed the plaintiff. Such an allowance in this case constitutes a penalty for exercising the defendant's right to appeal,

and in view of the generosity of the property settlement, it was error to make such an allowance.

We note that a guardian *ad litem* was not appointed for the five-year-old child to protect her interests on the custody and support issues and the services of the Department of Family Conciliation were not utilized. Since the issues of alimony, support, custody and property settlement must be redetermined, the trial court should appoint a guardian *ad litem* for the five-year-old daughter and request a report on the question of custody and support from the Department of Family Conciliation.

*By the Court.*—That part of the judgment granting alimony, support money, custody and property, and the order allowing attorney's fees are reversed and the cause remanded for further proceedings consistent with this opinion.