**In re Robert W. OLP, Debtor.**

**Bankruptcy No. 82–00585.**

United States Bankruptcy Court, E.D. Wisconsin.

May 17, 1983.

Roger A. Glenn, Appleton, Wis., for debtor.

Dennis Luebke, Appleton, Wis., for William C. Smith and Geraldine M. Smith, creditors.

John A. Esler, Kaukauna, Wis., for D & E & Sons Const. and for Dercks Masonry, creditors.

Allen B. Adams, Neenah, Wis., trustee.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

This Chapter 13 case came on for hearing on February 23, 1983 on the Chapter 13 trustee's motion for denial of confirmation of debtor's plan and dismissal or conversion of this case to a Chapter 7 case and on the debtor's objection to this motion.[1] The stated grounds for the motion are as follows:

1.  The proposed plan does not comply with the provisions of § 1325 of the Code;[2] and

2.  There is no proven source of income by debtor.

On March 2, 1982, Robert W. Olp ("Debtor") filed a petition for relief under the provisions of Title 11, U.S.Code, Chapter 13. In his plan as originally filed, he proposed to sell his homestead and from the proceeds of such sale, pay the secured creditors, namely, Home Savings and Loan Association and Valley National Bank, and also pay the priority creditor, Internal Revenue Service.

Debtor's original plan called for monthly payments of $100. He represented that his unsecured creditors would receive 5 per cent of their accepted claims over a three year period. Listed in his schedules were $4,119.46 in priority claims, $56,211.98 in secured claims and $79,155.05 in unsecured claims.

Debtor listed his occupation as a self-employed contractor with monthly income (including that of his wife who did not join in this plan) of $736.40. Of this monthly income, $100 constituted debtor's monthly take-home pay; the balance was income and support payments to his wife. Debtor also listed total monthly expenses of $1,911.00.

Thereafter, on August 11, 1982, debtor filed an amended plan. The amended plan

---

1.  There appears to be some uncertainty as to whether or not three other motions filed by creditors William C. and Geraldine M. Smith, D & E Sons Construction and Dercks Masonry, Inc. objecting to the confirmation of debtor's plan were duly noticed for the February 23, 1983 hearing. Because the Court's disposition of the Chapter 13 trustee's motion will fully resolve this case, these other motions are thereby rendered moot, and it will not be necessary for the Court to address this issue.

2.  From the testimony and proceedings, subsection (3) and (6) of § 1325(a) are the pertinent provisions and read as follows:

    § 1325—*Confirmation of Plan.*
    (a) The court shall confirm a plan if—
      (3) the plan has been proposed in good faith and not by any means forbidden by law;
      *   *   *   *   *   *
      (6) the debtor will be able to make all payments under the plan and to comply with the plan.

continued to provide for monthly payments of $100 into the plan and also continued to provide that debtor's home would be sold with the proceeds from the sale to pay the secured claims and Internal Revenue Service claim. The amended plan stated that the unsecured claimants would receive 5.6 per cent of their claims and that the undisputed claims, totalling $57,867.57, would be "handled by this plan". The debtor further noted in his amended plan that his former business partner, Jeffrey Winterfeldt, also had filed a Chapter 13 plan under which most of these same creditors would also be receiving payments "for approximately the same percentage of payment". The debtor also stated that among his unsecured claims are $1,100 of debts jointly held with debtor's wife which would be paid in full.

Since filing his Chapter 13 petition on March 2, 1982, debtor has changed jobs.[3] At present, he is working as an insurance agent on a commission basis. The evidence at the February 23, 1983 hearing indicated that debtor is averaging approximately $1,520.00 per month,[4] that debtor's wife is presently earning $688.00 per month[5] and that she is also receiving $250.00 monthly child support for a combined total monthly income by debtor and his wife of $2,466.74. There was no change in the previously submitted monthly expenses of $1,911.00.

Debtor's home has not been sold and is in the process of being foreclosed by the second mortgagee, Valley National Bank. There will be an anticipated mortgage deficiency of approximately $17,000.00.

## LACK OF GOOD FAITH

One of the criteria which must be met before a plan is confirmed is that it has been proposed *in good faith.* § 1325(a)(3) of the Bankruptcy Code. "Good faith" is a term not defined either in the Bankruptcy Code or Congressional Reports. *In re Burrell,* 25 B.R. 717, 720 (N.D.Cal.1982); 5 *Collier on Bankruptcy,* § 1425.01(2)(c) (15th Ed.1979). In arriving at a definition of "good faith" some courts, notably *In re Iacovoni,* 2 B.R. 256 (Bkrtcy.D.Utah 1980) have held that good faith requires substantial or meaningful payments to unsecured creditors. On the other end of the spectrum are decisions holding that so long as the minimum requirements of § 1325(a)(4) are met (namely, that unsecured creditors under debtor's Chapter 13 plan will receive not less than they would receive in a Chapter 7 liquidation) good faith exists. *In re Sadler,* 3 B.R. 536 (Bkrtcy.E.D.Ark.1980); *In re Harland,* 3 B.R. 597 (Bkrtcy.D.Neb.1980). It is this latter view which debtor seeks to have this Court adopt.

This Court rejects both of the above approaches and in lieu thereof follows the middle ground proclaimed by several other courts including the Seventh Circuit Court of Appeals which hold that good faith shall be determined on a case by case basis in the light of the particular facts and circumstances of each case. *In re Rimgale,* 669 F.2d 426 (7th Cir.1982). *See also, In re Tauscher,* 26 B.R. 99 (Bkrtcy.E.D.Wis. 1982); *In re Kull,* 12 B.R. 654 (Bkrtcy.S. D.Ga.1981); *In re Estus,* 695 F.2d 311 (8th Cir.1982); *In re Sheets,* 26 B.R. 523, 525 (Bkrtcy.D.N.M.1983). *In re Goeb,* 675 F.2d 1386 (9th Cir.1982). The court in *Estus,* 695 F.2d at 316 aptly phrased it as follows:

---

**3.** A petition which was filed by debtor dated March 11, 1982 seeking an extension of time to file the plan reveals that on March 3, 1982, debtor temporarily moved from Wisconsin to Texas. This took place one day after debtor filed his Chapter 13 petition. Based upon this petition for extension and upon debtor's Exhibit A which establishes that he had been employed with a Texas company as of March, 1982, it appears he obtained his new employment very shortly after filing his Chapter 13 petition.

**4.** This computation was based upon earnings from weekly reports introduced as part of debtor's Exhibit "A" and thereafter converted into monthly income.

**5.** This was never verified through wage statements. It is contained in debtor's Exhibit "A" by way of a self-serving representation.

"—subsection (a)(3) good faith does not impose a rigid and unyielding requirement of substantial payment to unsecured creditors. A per se minimum payment requirement to unsecured creditors as an element of good faith would infringe on the desired flexibility of Chapter 13 and is unwarranted. Nor should the courts perfunctorily conclude that good faith is achieved whenever the minimum requirements of subsection (a)(4) have been met. The good faith requirements demand a separate, independent determination."

■ Among the relevant factors to be taken into consideration is the debtor's *motive* in seeking relief under Chapter 13. From the testimony and entire record, this Court is satisfied that the prime, if not sole, purpose for debtor in filing this Chapter 13 case was to obtain the benefit of the broader discharge provisions which he could not otherwise avail himself of in a Chapter 7 case. More specifically, it is clear that the debtor, who had been engaged in the construction business as a contractor is vulnerable to potential adversary proceedings seeking to declare certain of his debts nondischargeable pursuant to the provisions of § 523(a)(4) of the Code, should he file under Chapter 7. Among his creditors are William C. and Geraldine M. Smith, for whom debtor had performed construction services, and who in fact had filed a complaint in the Chapter 13 case seeking to have their debt declared nondischargeable. However, upon recognizing that this complaint would become moot in the event the Chapter 13 plan was confirmed and successfully completed, Mr. and Mrs. Smith abandoned their nondischargeability complaint and filed an objection to confirmation of debtor's plan. The record in this particular case suggests that there may well be other creditors in a similar posture as Mr. and Mrs. Smith. When this Court sought to question debtor as to whether or not debtor received and retained funds due to his materialmen, debtor's counsel instructed his client not to answer "for obvious reasons". These "obvious reasons" are a clear indication to this Court that some nondischargeable debts may exist

pursuant to § 523(a)(4) (defalcation by a fiduciary). In a civil case, under these circumstances, a court can draw a prejudicial inference against the person refusing to answer as constituting an implied admission against his interest. *Molloy v. Molloy,* 46 Wis.2d 682, 176 N.W.2d 292 (1980). *See also, Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *Henricksen v. Henricksen,* 486 F.Supp. 622 (E.D. Wis., 1980).

Another factor to be examined on the issue of good faith is whether or not the debtor accurately reflected his debts, expenses and income in his schedules or if there were deficiencies or inaccuracies which amounted to an attempt to mislead the Bankruptcy Court. *In re Rimgale, supra.* What emerges from the record in this case is mass confusion. It is a record replete with inconsistencies transgressing the stage of mere inadvertence and excusable neglect into the area of bad faith. By way of example, debtor's schedules filed on March 2, 1982 listed his income at $100 per month. At the § 341(a) hearing conducted on December 17, 1982, debtor testified that his monthly take-home pay was in fact $1,146. Later, at the February 23, 1983 hearing conducted before this Court, debtor introduced documents purporting to show that he was receiving monthly income on a commission basis of approximately $1,520. No effort to explain or clarify these apparent discrepancies was made. The income picture for debtor's wife, which also had to be taken into account in the schedules even though she was not a co-debtor, is even more clouded. Debtor's schedules reflect his wife's income at $200 bi-weekly. During the § 341 hearing of December 17, 1982, debtor testified that his wife was unemployed. Following that, on February 23, 1983, debtor submitted documents to this Court purporting to show that his wife's current income was $688 per month and also that she had earned a total of $2,000 in 1982.

On at least two occasions, in an effort to sort out this confused state of affairs, this Court requested debtor's counsel to provide

copies of debtor's 1982 federal and state income tax returns. However, to date there has been a complete lack of compliance with this request.

Added to this disarray is the fact that debtor's budget of expenses set forth in his schedules fails to take into account any provisions for payment of priority taxes, which debtor stated would be fully paid outside of the plan. Also, there are no provisions for monthly payments to Valley National Bank which, according to debtor's testimony of February 23, 1983, he would assume, in order to prevent repossession of a 1980 Pontiac automobile owned and operated by his wife. This background serves to explain why the creditors and Chapter 13 trustee have been completely frustrated in attempts to unravel the confusion and why the Chapter 13 trustee is objecting to confirmation and is moving to dismiss this case.

There are other indications of bad faith in this case. The proposed percentage of dividends for the unsecured creditors had been projected by debtor initially at 5 per cent and thereafter at 5.6 per cent. While such a nominal dividend payment might alone not be sufficient to justify a finding of bad faith, it is, nevertheless, one factor which, along with the other factors present, leads this Court to make such a finding.

There remains yet another aspect of this case bearing on the lack of good faith which concerns this Court and which merits comment. As was previously alluded to in footnote 3 to this decision, on the very next day after debtor filed his Chapter 13 petition, he left Wisconsin and shortly thereafter obtained employment in Texas at a higher rate of pay than he had been receiving in Wisconsin. The Court believes the debtor planned this sequence of events before he filed his Chapter 13 petition. From excerpts of the December 17, 1982 hearing before the Chapter 13 trustee, there are strong indications that debtor's counsel sought to convince the trustee that he should look solely to debtor's income at the time of the filing of the Chapter 13 petition and that any subsequent increase in income which debtor may obtain was entirely irrelevant. If this is what debtor's counsel was attempting to establish, the Court rejects it as constituting an unfair manipulation of the Bankruptcy Code which cannot be condoned.

## LACK OF FEASIBILITY

■ A separate and alternative ground established by the evidence which supports the trustee's motion to dismiss this case, is the debtor's failure to meet the test of § 1325(a)(6) of the Code. This section, commonly referred to as the "feasibility" test, requires a showing by the debtor that he is able to make all payments under and fully comply with the plan. The burden of proof is upon the debtor. 3 *Norton, Bankruptcy Law and Practice,* § 77.09 (1981).

As has been noted, debtor's expenses total $1,911 per month and the plan calls for monthly payments of $100. The Court has previously stated that, due to the confused state of the record and schedules, it has been unable to gain a firm grip on the actual total revenues for the debtor and his wife. Nevertheless, after giving the debtor the benefit of all doubt, it appears that at the very most, that the combined monthly revenues of the debtor and his wife do not exceed $2,500. There are some substantial expenses which have been omitted from the debtor's budget, which must be projected and which would increase the monthly expenses from the present projections of $1,911. These missing projections include outstanding taxes, totalling approximately $5,000, to be paid directly by debtor to the Internal Revenue Service. In addition, the payments to Valley National Bank for the automobile owned and operated by debtor's wife which debtor testified would have to be paid, have not been taken into account. Furthermore, the debtor testified he had incurred some post-Chapter 13 expenses totalling approximately $1,200 which would also be required to be paid by him.

It is also appropriate to note that the total revenues of the debtor include, to a large extent, earnings and support payments being received by his wife who is not even a party to this Chapter 13 case and

who is, therefore, not bound by the plan. It is doubtful if the debtor should be permitted to rely upon support payments intended for the use and benefit of his wife's child by a previous marriage as well as upon the earnings of his wife, even though such earnings are in fact being jointly pooled with his earnings. In *In re Avins,* 19 B.R. 736 (Bkrtcy.Ct.S.D.Fla.1982) the court was faced with a similar situation and concluded that feasibility was lacking where the source of funds relied upon by the debtor included earnings of his wife who was not a party to the Chapter 13 petition. The court stated, *Avins,* 19 B.R. at 737:

> "I am unable to find that the debtor will be able to make all payments under the plan and to comply with the plan, because the wife is in no way bound by the plan although her income and the income from property she jointly owns is essential to the support of this plan."

Under the circumstances, this Court is persuaded that feasibility is lacking.

## CONCLUSION

The Court therefore denies confirmation of debtor's Chapter 13 plan and dismisses this case upon the following grounds:

1. Debtor's plan has not been filed in good faith, pursuant to § 1325(a)(3); and, as an alternative ground,

2. Debtor has failed to meet the burden of establishing that the plan is feasible, pursuant to § 1325(a)(6).[5]

---

5. In view of this decision, the Court believes it would be redundant to consider the remaining grounds raised by the Chapter 13 trustee to dismiss this case based upon no proven source of income by debtor and, accordingly, declines to do so.