STATE of Wisconsin, Plaintiff-Respondent,

v.

Samantha HEFT, Defendant-Appellant-Petitioner.

Supreme Court

*No. 92–2938–CR. Oral argument May 25, 1994.—Decided June 23, 1994.*

(Also reported in 517 N.W.2d 494.)

For the defendant-appellant-petitioner there were brief by *Martin I. Hanson* and *Hanson, Gasiorkiewicz & Weber, S.C.,* Racine and oral argument by *Martin I. Hanson.*

For the plaintiff-respondent the cause was argued by *Marguerite M. Moeller,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

JANINE P. GESKE, J.    This is a review of a published decision of the court of appeals, *State v. Heft,* 178 Wis. 2d 823, 505 N.W.2d 437 (Ct. App. 1993), which affirmed an order of the circuit court for Racine County, Barbara A. Kluka, Circuit Judge. The circuit

court denied a motion for postconviction relief filed by defendant, Samantha Heft (Heft). Heft, who was convicted of homicide by intoxicated use of a vehicle, under sec. 940.09(1), Stats.,[1] claimed she was denied her right to due process when the circuit court refused to require a witness, Daniel Cisler (Cisler), to invoke his fifth amendment privilege in the presence of the jury, thereby depriving her of the opportunity to present a complete defense. Though Heft admitted to driving while intoxicated, she claimed it was Cisler who, by rear-ending her car, caused the accident which resulted in the death of Heft's passenger, Todd Johnson (Johnson).

Heft also argued that sec. 905.13, Stats.,[2] created an unconstitutional distinction between criminal and

---

[1] Section 940.09(1), Stats., provides in relevant part:

**940.09 Homicide by intoxicated use of vehicle or firearm. (1)** Any person who does any of the following is guilty of a Class C felony:

(a) Causes the death of another by the operation or handling of a vehicle while under the influence of an intoxicant.

(b) Causes the death of another by the operation or handling of a vehicle while the person has a prohibited alcohol concentration, as defined in s. 340.01(46m).

. . .

[2] Section 905.13, Stats., provides:

**905.13 Comment upon or inference from claim of privilege; instruction. (1)** *Comment or inference not permitted.* The claim of a privilege, whether in the present proceeding or upon a prior occasion, is not a proper subject of comment by judge or counsel. No inference may be drawn therefrom.

**(2)** *Claiming privilege without knowledge of jury.* In jury cases, proceedings shall be conducted, to the extent practicable, so as to facilitate the making of claims of privilege without the knowledge of the jury.

**(3)** *Jury instruction.* Upon request, any party against whom the jury might draw an adverse inference from a claim of privilege

civil proceedings by prohibiting comment upon or inference from a claim of privilege in her trial for homicide by intoxicated use of a vehicle. This distinction, according to Heft, resulted in a denial of her right to equal protection of the law when the court refused both to compel Cisler to invoke his fifth amendment privilege in the presence of the jury and to instruct the jury that an adverse inference could be drawn when Cisler made that invocation.

The issue before us is whether the circuit court's denial of Heft's request to require a third-party witness to invoke his fifth amendment privilege in the presence of the jury, pursuant to sec. 905.13, Stats., and its refusal to instruct the jury on the adverse inference it could draw from such an invocation, denied Heft her constitutional rights of equal protection under the law and due process.

We affirm the decision of the court of appeals and hold the following. First, Heft was afforded a meaningful opportunity to present a complete defense. During her trial, Heft introduced substantial evidence in the form of testimony and exhibits which supported her defense that even if she had not been under the influence of an intoxicant, Johnson would have died anyway because of witness Cisler's conduct. The circuit court admitted into evidence inconsistent out-of-court statements made by Cisler, photographs of Cisler's car, and the opinions of two accident reconstruction experts.

Second, sec. 905.13 does not violate the equal protection clause of either the Wisconsin or United States

is entitled to an instruction that no inference may be drawn therefrom.

**(4)** *Application; self-incrimination.* Subsections (1) to (3) do not apply in a civil case with respect to the privilege against self-incrimination.

Constitution.[3] The ability of Heft to compel a third-party witness to invoke his fifth amendment privilege in the presence of the jury cannot be construed as a fundamental right. We find that there exists a rational basis for the distinction between civil and criminal treatment of a witness's invocation of the fifth amendment privilege and the inferences that can be drawn therefrom. The consequences flowing from a criminal conviction, such as the loss of one's liberty and reputation, the need for mutuality, and the potential for collusion, all provide a rational foundation for the distinction found in sec. 905.13.

Although the trial transcript is not before us, we summarize the facts using information from the criminal complaint and other records in the file. At approximately 2:30 a.m. on August 1, 1990, two police officers in the Town of Caledonia, Racine County, responded to a report of a car accident. When they arrived at the scene, they saw a Chevy Geo in a ditch alongside Highway 31. Heft was inside the car, and, according to the officers, she had an odor of intoxicants on her breath. Beer cans were also found near the car. While scanning the area of the accident, the police located Johnson lying on the ground, several yards from the car. He died as a result of the accident. It was later determined that Heft's car had crossed the center line of the highway, gone off the shoulder of the road, down a steep embankment, rolled, and crashed into several trees.

---

[3] The equal protection clause in the Wisconsin Constitution requires the identical interpretation as that given to the parallel provision of the United States Constitution. *Funk v. Wollin Silo & Equipment, Inc.,* 148 Wis. 2d 59, 61 n.2, 435 N.W.2d 244 (1989).

While at the hospital, police questioned Heft as to whether she had been drinking. When she answered "yes," Heft was placed under arrest for homicide by intoxicated use of a vehicle, in violation of sec. 940.09(1), Stats. A blood sample was taken, and on August 6, 1990, the lab analysis confirmed that Heft had a blood alcohol level of 0.186 per cent.

During their investigation of the accident, police interviewed Cisler, who provided the following version of events up to the time of the accident. Heft, Johnson, and Cisler were together at a bar until 1:30 a.m. on August 1, 1990. When the three were ready to leave, Heft appeared to be intoxicated, having consumed a number of rum and Cokes. Heft drove Cisler to his home and then left, with Johnson in the passenger seat. Shortly thereafter, Cisler heard the squealing of tires. He ran down the road and found Heft's car in a ditch. When Cisler asked where Johnson was, Heft said no one was with her.

It must be noted that at the preliminary hearing, one of the officers who was at the accident scene testified that two cars were present, one belonging to Cisler. Additionally, Cisler gave three to four different statements both to the police and to a friend regarding his behavior leading up to and immediately after the accident.

During her trial, Heft did not contest the elements of the crime under sec. 940.09(1). In fact, she proffered a stipulation which stated that: (1) at the time of the accident, Heft was the driver of the car; (2) Johnson was a passenger in Heft's car, and his death was caused as a result of the accident which occurred while Heft was driving; and (3) Heft was driving under the influence of an intoxicant and had a blood alcohol concentration of 0.10 per cent or more at the time of the

accident. However, Heft did attempt to prove the affirmative defense under sec. 940.09(2), Stats.,[4] that since the accident was caused as a result of her car being rear-ended by another vehicle, the resulting death of Johnson would have occurred even if she had not been operating under the influence with a blood alcohol concentration in excess of 0.10 per cent or had been exercising due care.

It was Heft's contention that her car was rear-ended by another, driven by Cisler. When Cisler was called as a witness, it was done outside the presence of the jury because he invoked his fifth amendment right to protection from self-incrimination. Heft requested that Cisler's fifth amendment privilege occur in front of the jury and that the jury be instructed it could draw an adverse inference from the invocation. The circuit court denied the request, pursuant to sec. 905.13.

The defense attorney requested two special jury instructions concerning Cisler. One informed the jury that Cisler was unavailable as a witness in the trial and, therefore, no adverse inference should be drawn against either party for not calling him to the stand. The other instruction explained Heft's theory on her affirmative defense. The circuit court gave both requested instructions. Subsequently, the jury found Heft guilty. The circuit court denied Heft's motion for a new trial.

The court of appeals affirmed the circuit court order which denied Heft's postconviction motion and

---

[4] Section 940.09(2), Stats., provides in relevant part:

The defendant has a defense if he or she proves by a preponderance of the evidence that the death would have occurred even if he or she had been exercising due care and he or she had not been under the influence of an intoxicant or did not have a blood alcohol concentration described under sub. (1)(b) . . ..

held that Heft was not deprived of a fair opportunity to present a defense because she was able to introduce at trial considerable evidence supporting her theory of intervening cause. *Heft,* 178 Wis. 2d at 825. Consequently, she was not denied due process. Additionally, the court concluded that sec. 905.13 did not violate the equal protection clauses of the Wisconsin and United States Constitutions because the legislature had a rational basis for creating a distinction between criminal and civil proceedings regarding comment upon or inference from a claim of privilege. *Id.* The rational basis includes the fact that the "consequences of a criminal conviction are much more severe than in a civil action where typically only money damages are at stake." *Id.* at 833.

Whether the circuit court denied Heft the right to present a defense is a question of constitutional fact which we review *de novo. In Interest of Michael R.B.,* 175 Wis. 2d 713, 720, 499 N.W.2d 641 (1993). Heft has also challenged the constitutionality of sec. 905.13. This court's analysis of the constitutionality of a statute is a question of law which we consider without deference to the decisions of the courts below. *Guertin v. Harbour Assur. Co.,* 141 Wis. 2d 622, 633, 415 N.W.2d 831 (1987).

When the state charges a person with homicide by intoxicated use of a vehicle, it must prove beyond a reasonable doubt the following elements of the crime: (a) the defendant caused the death of another (b) while the defendant was operating a vehicle (c) while under the influence of an intoxicant. Section 940.09(1)(a), Stats. Specifically, the state must establish a causal connection between the death of the victim and the defendant's *operation of a motor vehicle* while intoxi-

cated. Because the legislature has determined that driving while intoxicated is an inherently dangerous activity, the state need not prove a direct causal connection between the defendant's intoxication and the death of the victim. *State v. Caibaiosai,* 122 Wis. 2d 587, 594, 363 N.W.2d 574 (1985).

Section 940.09(2) provides a defendant with an affirmative defense, a separate issue from the elements the state must prove and one which requires proof by preponderance of the evidence. *See State v. Saternus,* 127 Wis. 2d 460, 480, 381 N.W.2d 290 (1986). This section recognizes that intervening factors may exist between the intoxicated use of a vehicle and the death of an individual. A defendant presents that affirmative defense during the trial on the criminal charge. The same jury decides both whether the state has proven guilt beyond a reasonable doubt and, if so, whether the defendant has established a defense to the charge by a preponderance of the evidence.

Heft does not dispute that the state successfully established the elements of the crime. However, she argues that her affirmative defense could not be effectively presented when the court refused to compel Cisler to invoke his fifth amendment privilege in the presence of the jury, thereby eliminating use of the adverse inference that his refusal to testify meant he was responsible for some improper or illegal act. The circuit court's actions were based upon the application of sec. 905.13, which, according to Heft, created an unconstitutional distinction between civil and criminal cases regarding witness invocation of the fifth amendment privilege. Therefore, she contends that sec. 905.13 denied her equal protection of the law and prevented the presentation of a complete defense in violation of her right to due process.

Since "[e]very presumption must be indulged to sustain the law if at all possible,"[5] "[a] statute will be declared violative of equal protection only when it is shown beyond a reasonable doubt that the legislature has made an irrational or arbitrary classification, one that has no reasonable purpose or relationship to the facts or legitimate state policy." *Peissig v. Wisconsin Gas Co.*, 155 Wis. 2d 686, 699, 456 N.W.2d 348 (1990). *See also State v. Sher,* 149 Wis. 2d 1, 15, 437 N.W.2d 878 (1989) (a party claiming that a statute violates the equal protection clause must prove abuse of legislative discretion beyond a reasonable doubt).

Further, "[u]nless the challenged statute affects a 'fundamental right' or creates a classification based on a 'suspect class,' the standard this court uses in reviewing the constitutionality of the statutory classification is the 'rational basis' test." *Matter of Care & Maintenance of K.C.,* 142 Wis. 2d 906, 916, 420 N.W.2d 37 (1988) (citation omitted). Neither a fundamental right nor a suspect class has been implicated in this case. Specifically, the ability of Heft to compel witness Cisler to invoke his fifth amendment privilege in the presence of the jury cannot be construed as a fundamental right.

The United States Supreme Court has held that it is constitutional error under the fifth amendment "to instruct a jury in a criminal case that it may draw an inference of guilt from a defendant's failure to testify about facts relevant to his case." *Baxter v. Palmigiano,* 425 U.S. 308, 317 (1976) (citing *Griffin v. California,*

---

[5] *Racine Steel Castings v. Hardy,* 144 Wis. 2d 553, 559, 426 N.W.2d 33 (1988) (citation omitted).

380 U.S. 609 (1965)).[6] Described as "the essential mainstay of our adversary system,"[7] "the privilege against self-incrimination guarantees each individual the right to remain silent without penalty, and, more specifically, the right not to be compelled to produce testimonial or communicative evidence which may be incriminating." 1 Scott N. Stone & Robert K. Taylor, *Testimonial Privileges,* sec. 4.01 at 4–3 (2d ed. 1993) (footnote omitted).[8]

In 1965, the United States Supreme Court stated that allowing comment upon a defendant's claim of the fifth amendment privilege "cuts down on the privilege by making its assertion costly." *Griffin,* 380 U.S. at 614. That prohibition was expanded to include third-party witnesses in both the 1972 proposed Federal Rule of Evidence 513 and later in sec. 905.13, Stats. The proposed Federal Rules of Evidence were

[6] The fifth amendment to the United States Constitution provides in pertinent part that no person "shall be compelled in any criminal case to be a witness against himself . . .." The fourteenth amendment makes this fifth amendment privilege binding on all of the states, as well as the federal government. *See Griffin,* 380 U.S. at 615.

[7] *Miranda v. Arizona,* 384 U.S. 436, 460 (1966).

[8] The fifth amendment guarantee against self-incrimination has served as "not only a protection against conviction and prosecution but a safeguard of conscience and human dignity and freedom of expression as well." *Ullman v. United States,* 350 U.S. 422, 445 (1956).

The fifth amendment was developed in response to the desire of the framers of the Constitution to "prevent any Congress, any court, and any prosecutor from prying open the lips of an accused to make incriminating statements against his will." *Id.* at 449. Many of the framers and those who preceded them had experienced the various tactics of political and religious oppression during the 16th, 17th and 18th centuries.

presented to the United States Supreme Court in 1972. The Court prescribed those rules, including Rule 513, and then transmitted them to Congress for adoption. Congress deleted all the rules pertaining to privilege, including Rule 513, and instead adopted Rule 501, which provided that the courts should follow the common law of privilege. The federal rules became effective July 1, 1975.

This court ordered the Wisconsin Rules of Evidence, many of which were modeled after the proposed federal rules, to become effective on January 1, 1974. *See* 59 Wis. 2d R1, R153 (1973). For example, sec. 905.13(1), (2) and (3) is identical to the originally proposed federal rule 513(a), (b) and (c). The federal advisory notes which follow sec. 905.13, Stats., emphasize the importance of a privilege and the harm that might result from allowing the exercise of that privilege before the jury. However, this court also adopted subsection (4) which provides that subsections (1), (2) and (3) "do not apply in a civil case with respect to the privilege against self-incrimination." The Wisconsin Judicial Council Committee notes tell us that subsection (4) was added to codify existing case law in Wisconsin. *See Grognet v. Fox Valley Trucking Service,* 45 Wis. 2d 235, 172 N.W.2d 812 (1969); *Molloy v. Molloy,* 46 Wis. 2d 682, 176 N.W.2d 292 (1970).

Wisconsin has long recognized that the invocation of the fifth amendment in a civil case can result in an adverse inference. *Grognet,* 45 Wis. 2d at 249. Heft argues that since the affirmative defense provision of sec. 940.09 requires a civil burden of proof, sec. 905.13 is unconstitutional under these facts. However, the issue here is whether there exists a rational basis to allow the fact finder to consider that adverse inference in a civil case but not to allow it in a criminal homicide

by intoxicated use case in which a defendant is attempting to establish an affirmative defense by the preponderance of the evidence. We find a rational basis for prohibiting this inference because the "consequences of a criminal conviction are much more severe than in a civil action where typically only money damages are at stake." *Heft,* 178 Wis. 2d at 833. In particular, a defendant in a criminal trial faces the loss of his or her liberty interest and reputation within the community. *Id. See also* 8 Wigmore, *Evidence,* sec. 2272 (McNaughton rev. 1961; supp. 1991).

Another reason for the distinction between criminal and civil cases is the need for mutuality. Clearly, the statute reasonably prohibits a prosecutor from attempting to prove up a criminal case by calling a group of the defendant's friends who assert their fifth amendment privilege before the jury. If there is a rational basis for the state not to be permitted to rely on adverse inferences from the invocation of a fifth amendment right, then the defendant should not be able to benefit from an identical inference. If this court were to accept Heft's argument that she could force Cisler to plead the fifth in the presence of the jury, what, then, should preclude the state, when attempting to rebut her affirmative defense, from adversely calling her to the stand and forcing her to assert her right to remain silent before the jury?[9] The consequences of this scenario demonstrate the rationality of treating criminal and civil cases differently.

Collusion between criminal defendants and witnesses is also a valid concern. That is, a defendant, for the sole purpose of creating a reasonable doubt in the mind of the jurors, could choose not to testify and then

___

[9] Although Heft testified at trial, she also certainly had the right not to take the stand.

could call various witnesses who he or she knew would plead the fifth amendment.

We agree with the court of appeals' analysis that neither the state nor the defendant should be allowed to call witnesses who either side knows will invoke the fifth amendment in front of the jury and then be subject to inferences in a form not subject to cross-examination. *Heft,* 178 Wis. 2d at 834. *See also Namet v. United States,* 373 U.S. 179, 186–87 (1963).

The distinction between civil and criminal treatment of a witness's invocation of the fifth amendment privilege and inferences drawn therefrom is rational and, therefore, valid. For the foregoing reasons, we conclude that sec. 905.13 does not violate Heft's right to equal protection.

Finally, consideration must be given to Heft's due process claim. Specifically, she alleges that the circuit court's application of sec. 905.13 had an extremely adverse effect on her ability to establish an affirmative defense under sec. 940.09(2). This is so, according to Heft, because although she was allowed to introduce evidence at trial which was favorable to her, none of it had the probative value in front of the jury that Cisler's refusal to testify would have had. Further, Heft argues that the prosecution would have been forced to rebut the inference that Cisler himself might be guilty of improper or illegal conduct if he invoked the fifth amendment in front of the jury.

"Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness." *California v. Trombetta,* 467 U.S. 479, 485 (1984). *See also State v.*

302

*Disch,* 119 Wis. 2d 461, 477, 351 N.W.2d 492 (1984) (due process guarantees the accused a fair trial, and any violation of fundamental fairness will constitute a denial of that guarantee). That standard of fairness requires that a criminal defendant be afforded a meaningful opportunity to present a complete defense, including the right to call, confront and cross-examine witnesses. *Chambers v. Mississippi,* 410 U.S. 284, 295 (1973).

However, as stated by the Court in *Chambers,* "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Id.* The circuit court's refusal to compel Cisler to invoke his fifth amendment privilege in the presence of the jury presented just such a legitimate interest and did not have the effect of denying Heft the opportunity to present a complete defense. To the contrary, during the trial, Heft was able to introduce a series of inconsistent statements made by Cisler to the police following the accident;[10] a substantial number of exhibits, including photographs of Cisler's car; and the testimony of two accident reconstruction experts, who supported her claim that the accident which killed Johnson occurred when her car was hit from the rear by Cisler's car.

We conclude that Heft's constitutional rights to equal protection of the law and due process have not been imperiled by the application of sec. 905.13, Stats. We find that there exists a rational basis for the distinction between civil and criminal treatment of a witness's invocation of the fifth amendment privilege

---

[10] The circuit court admitted these statements not for the truth of the matter asserted, but to show Cisler's guilty state of mind.

and the inferences that can be drawn therefrom. Therefore, the circuit court's refusal to compel Cisler to invoke his privilege before the jury and to instruct the jury about that refusal did not prevent Heft from presenting a meaningful defense under sec. 940.09(2), Stats.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. *(concurring).* This case is about the constitutional right of a defendant to present an affirmative defense to a criminal charge. I conclude that under the circumstances of this case, the circuit court erred by not compelling Cisler to invoke the Fifth Amendment in the presence of the jury and by not instructing the jury that an adverse inference could be drawn from that invocation. Because we do not have the trial record before us, I cannot determine whether this error was prejudicial. The consequences of submitting an incomplete trial court record on appeal fall on the defendant who brought this matter to the court. Accordingly, the conviction should be affirmed.

I agree with the majority opinion and the court of appeals' opinion that the defendant was able to present considerable evidence in support of her theory that Cisler caused the victim's death. Nevertheless, the inference the jury could have drawn from Cisler's refusal to answer would have "added critical weight" to the defendant's affirmative defense. *Namet v. United States,* 373 U.S. 179, 186–187 (1963). I therefore conclude that under the circumstances of this case, the circuit court erred.

The interests behind the prohibition against allowing a jury to draw an adverse inference from a witness's invocation of the Fifth Amendment in a criminal case are clearly set forth by the majority, Majority opinion at 301–303, and under most circumstances, I would entirely agree with this analysis. There are constitutional implications if the state uses against the defendant invocations of the privilege against self-incrimination by prosecution witnesses or the defendant. It would also be unwise to allow defendants to create a reasonable doubt by calling to the stand witnesses who would plead the Fifth Amendment.

We must not forget, however, that the principal reason for our unwillingness to allow the jury to draw an adverse inference from an invocation of the Fifth Amendment is that we do not want the defendant to be prejudiced for exercising a constitutional right. In other words, under most circumstances the defendant *benefits* from the rule articulated in sec. 905.13. However, in the case at bar, the defendant's ability to mount an affirmative defense is potentially compromised by the operation of the statute. Here, the interests underlying the rule militate in favor of requiring Cisler to invoke the Fifth Amendment in front of the jury. In addition, the reasons for which we generally prohibit the jury from drawing an adverse inference from such an invocation are not present.

Several circumstances distinguish this case. First, in a criminal case the state ordinarily has the burden to prove causation beyond a reasonable doubt. However, the statute involved in this case is very unusual. It puts the burden on the defendant to prove by a preponderance of the evidence (the civil standard) that she did not cause the death. In other words, she must prove that the death would have occurred even if she had not

been under the influence of an intoxicant. Section 940.09(2), Stats. 1991–92.

Second, the defendant testified, so we do not have the problem of commenting on the criminal defendant's failure to testify.

Third, the defendant presented sufficient evidence supporting her theory that Cisler caused the victim's death. We therefore need not be concerned about collusion or fraud on the court.

According to the state's brief, several cases in other jurisdictions bar the drawing of any inference from a witness's invocation of the Fifth Amendment in a criminal case. According to these courts, the jury may think it high court drama for a witness "to take the Fifth," yet the probative value of a witness exercising the privilege is limited. A witness need not justify the fear of incrimination; a witness is not subject to cross examination; and a witness may invoke the constitutional privilege against self incrimination for a reason other than guilt. *Bowles v. United States,* 439 F.2d 536, 541–42 (D.C. Cir. 1970) (en banc), *cert. denied,* 401 U.S. 995 (1971). "Thus inferring guilt from the mere exercise of the privilege would be improper and is at best based on speculation, not evidence." *People v. Mincey,* 827 P.2d 388, 408 (Cal.) (en banc), *cert. denied,* 113 S. Ct. 637 (1992).*

Although good reasons might exist for excluding any inference from a witness's invocation of the Fifth Amendment privilege, whether in civil or criminal cases, this court has not accepted them. In adopting sec. (Rule) 905.13, Stats. 1991–92, the court has con-

---

* For cases discussing the adverse inferences which may or may not be drawn from invocation of the privilege, *see* 8 Wigmore on Evidence sec. 2272 (McNaughton rev. ed. 1961) (Walter A. Reiser 1994 Supp.).

cluded that a jury in a civil case may draw an adverse inference from a claim of privilege. But the limitation of adverse inference to civil cases presents a problem of constitutional dimensions in the case at bar.

For the reasons set forth, I concur.

I am authorized to state that Justice WILLIAM A. BABLITCH joins this concurrence.